**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No.:  09-cv-00858-WJM-MEH

EBONIE S., a child, by her mother and next friend, MARY S.

       Plaintiff,

v.

PUEBLO SCHOOL DISTRICT 60,
MARILYN GOLDEN, Teacher, in her official and individual capacities,
GARY TRUJILLO, Principal, in his official and individual capacities,
MARY JO BOLLINGER, Executive Director of Exceptions Student services,
in her official and individual capacities,
LOUISE RIVAS, paraprofessional, in her official and individual capacities,
SHARON WELLS, paraprofessional, in her official and individual capacities,
ISABEL SANCHEZ, paraprofessional, in her official and individual capacities,
AUDRA MARTINEZ, paraprofessional, in her official and individual capacities, and
KRISTEN POTTER, paraprofessional, in her official and individual capacities,

       Defendants.

---

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendants' Motion for Summary Judgment and Memorandum Brief in Support of Motion for Summary Judgment, ECF No. 80, and Defendant Golden's Motion for Summary Judgment and Memorandum Brief in Support of Motion for Summary Judgment, ECF No. 81, (the "Motions for Summary Judgment"). For the following reasons, the Motions for Summary Judgment are GRANTED in part and DENIED in part.

# INTRODUCTION

Plaintiff Ebonie S.[1] ("Ebonie S." or "Plaintiff") alleges that Defendant Marilyn Golden ("Defendant Golden"), her kindergarten teacher at Bessemer Academy ("Bessemer"), located in Pueblo, Colo., and Defendants Louise Rivas ("Rivas"), Sharon Wells ("Wells"), Isabel Sanchez ("Sanchez"), Audra Martinez ("Martinez"), and Kristen Potter ("Potter") (collectively the "Paraprofessional Defendants"), paraprofessionals within Defendant Golden's classroom, violated Ebonie S.'s constitutional and statutory rights in using a secure wrap-around table that included a restraint bar in the classroom. Ebonie S. also alleges Defendants Gary Trujillo ("Trujillo") and Mary Jo Bollinger ("Bollinger") (collectively "Supervisory Defendants Bollinger and Trujillo") and Defendant Pueblo School District 60 (the "School District") violated Ebonie S.'s constitutional and statutory rights in allowing the use of the secure wrap-around table in Defendant Golden's classroom.  Of the seven claims originally asserted by Plaintiff, six remain before the Court: (1) violation of the Fourth Amendment; (2) violation of the Fourteenth Amendment Deprivation of Liberty without Due Process; (3) violation of the Fourteenth Amendment Equal Protection Clause; (4) Failure to Train and Supervise; (5) violation of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"); and (6) violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act.").[2]

---

[1] The Court refers to the plaintiff as Ebonie S. to protect her privacy.

[2] On April 27, 2011, Plaintiff filed a Stipulation for Withdrawal of Substantive Due Process Claim, ECF No. 152.  Plaintiff's Substantive Due Process claim for relief is thus no longer before the Court.

# BACKGROUND

## I.      Factual Background[3]

Ebonie S. is a special needs child who has been diagnosed with Down Syndrome, a mood disorder, impulse control disorder, sleep disorder, hypothyrodism, Attention Deficit Hyperactivity Disorder, and Autism.  (Pl.'s Resp. Defs.' Mot. Summ. J. 1-2, ECF No. 85.)  These disabilities prevent Ebonie S. from controlling herself as a typical child would.  (Final Pretrial Order, ECF No. 98 at 11.)  During the school year at issue, Ebonie S.'s behavior declined, Amended Complaint ¶ 55, ECF No. 4, and she has since been further diagnosed with Anxiety Disorder, Oppositional Defiant Disorder, and Post-Traumatic Stress Disorder, ECF No. 85 at 2.

During the 2005-06 school year Ebonie S. was enrolled at Sunset Elementary School and then Columbian Elementary School ("Columbian"), both located in Pueblo, Colo., in a pre-kindergarten program.  (ECF No. 80 at 2.)  School officials developed an Individual Education Plan ("IEP") and Behavior Support Plan as required by the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq.* ("IDEA"), for Ebonie S. while she was attending Columbian.  (ECF No. 77-1 at ¶ 16, ECF No. 85-4 at 3.)

At Columbian, Ebonie S.'s adoptive mother, Mary S.,[4] first approved of the use of a secure wrap-around desk with Ebonie S.  (ECF No. 80 at 3.)  The "secure wrap-around desk" ("wrap-around desk") consists of a desk with a large surface area that wraps around the front and sides of the child sitting at it.  The wrap-around desk is bolted to a floorboard, and there is an additional, removable, board that can be added to

---

[3] Unless otherwise noted, the following facts are either undisputed or construed in Plaintiff's favor.

[4] The Court refers to Ebonie S.'s mother as Mary S. to protect the child's privacy.

the back of the desk to restrain the child in the table.  (ECF No. 4 ¶ 33.)  At Bessemer, the wrap-around desks were not used in classrooms for non-disabled students.  (ECF No. 4 at ¶ 64.)

Ebonie S. used the wrap-around desk for eating and table work.  (ECF No. 80 at 3.)  At Columbian, Mary S. observed Ebonie S. in the wrap-around desk working with an aide in a one-on-one setting, rotating between activities, and enjoying her setting.  (ECF No. 80-3 at 285:4-286:6.)  Mary S. did not have any concerns with the use of the wrap-around desk at this time.  (*Id.*)

During the 2006-07 school year, Ebonie S. was enrolled in kindergarten at Bessemer in Defendant Golden's classroom, which was designed for children with Significantly Limited Intellectual Capacity ("SLIC").  (ECF No. 80 at 2; ECF No. 4 ¶ 20.)  There were approximately 15 students in the classroom with Ebonie S., ranging in ages from five to eleven years old.  (ECF No. 86-26 at 1.)

At Bessemer, Mary S. regularly met with school officials, including Defendant Golden and Defendant Bollinger, who was Interim Director of Exceptional Student Services for the School District, to review Ebonie S.'s IEP.  During a review meeting on December 14, 2006, Mary S. specifically approved of use of the restraining bar on the wrap-around desk in Defendant Golden's classroom "as a means to keep Ebonie in her seat."  (ECF No. 80-5 at 5.)  Five children, including Ebonie S., used the wrap-around desks in Defendant Golden's classroom.  (*See* ECF No. 80-2 at 55:15-19.)

Mary S. noticed a difference in the way the wrap-around desk was used with Ebonie S. at Bessemer.  (ECF No. 80-3 at 286:13-291:10.)  She observed that the paraprofessionals, while nearby when Ebonie S. was in the wrap-around desk, were not

4

spending as much one-on-one time with her, and Ebonie S. seemed to be in the wrap-around desk with much more frequency.  (ECF No. 80-3 at 286:13-291:10.)

Defendant Golden and the Paraprofessional Defendants admit that Ebonie S. was regularly in the wrap-around desk.  (*See* ECF No. 80-4 at 42:1-10.)  Ebonie S. was placed in the wrap-around desk when she exhibited "out of control behavior" that Defendant Golden or the Paraprofessional Defendants were not able to de-escalate. (ECF No. 80-4 at 41:9-24.)  When she was in the wrap-around desk, a teacher was supposed to be sitting nearby working with her.  (*See* ECF No 81-8 ¶ 19.)  During work time, if Ebonie S. was not paying attention or did not want to work, the bar would be put down, then lifted once she began her assignment.  (ECF No. 80 at 2.)  Likewise, if Ebonie S. wanted to go play instead of doing the assignment at hand, the bar would be put down until she was on task.  (ECF No. 80 at 3.)  When Ebonie S. was not interested in participating in the class activity, she "would run around the room wildly, flop[] on the floor, or simply go[] limp."  (ECF No. 86-26 at 2.)

The parties dispute how often and for what reason Ebonie S. was placed in the wrap-around desk.  (*See* ECF No 85 at 3.)  Defendants assert that the bar was down to "assist Plaintiff with learning and for her safety."  (ECF No. 80 at 5.)  However, the School District's legal counsel claims that the wrap-around desks were only used "to effect the safe handling of students in emergency situations and who posed a serious imminent threat to themselves and others."  (ECF No. 85 at 7.)  In addition to the approved uses of table work and eating, Defendant Paraprofessionals said the wrap-around desks were used to "threaten" children.  (ECF No. 85 at 8.)  Defendant Golden

testified that she used the wrap-around desk "for discipline, punishment, and time-out." (*Id.*)

Ebonie S. was never violent or dangerous while attending Bessemer.  (ECF No. 85 at ¶ 5.)  Nor did she need the restraint for support.  (*Id.*)

It is unclear whether Ebonie S. could get out of the wrap-around desk when the bar was down.  (*See* ECF No. 80-4 at 138:7-141:1.)  Ebonie S. had the skill to get out of the wrap-around desk when the bar was down, but because it was a timeout, she was not permitted to do so.  (*Id.*)  There is also a dispute as to how Ebonie S. got into the wrap-around desk.  In a statement, Defendant Wells wrote that Ebonie S. was sometimes carried to the wrap-around desk.  (ECF No. 85 at 9 ¶ 16.)  However, she later stated that this did not happen.  (*Id.*)

In March, 2007, Mary S. had a meeting with Defendant Trujillo, principal at Bessemer, where she expressed her concern about the use of the wrap-around desks with Ebonie S.[5]  (ECF No. 80-3 at 298:8-16.)  However, neither the Paraprofessional Defendants nor Defendant Golden were ever told to discontinue use of the wrap-around desk with Ebonie S.  (ECF No. 80-2 at 55:9-13; ECF No. 86-26 at ¶ 25.)

April 9, 2007 was Ebonie S.'s last day at Bessemer.  (ECF No. 77-1 at ¶ 15.)

In the Fall of 2007, after Ebonie S. had left Bessemer, members of the non-profit organization the Legal Center for People with Disabilities and Older People ("Legal Center") visited Bessemer to investigate use of the secure wrap-around tables.  (ECF

---

[5] Plaintiff alleges that Mary S. signed an agreement with Defendant Trujillo that the wrap-around desk would no longer be used with Ebonie S.  (ECF No. 4 at ¶ 70; ECF No. 85 at 6.) However, Plaintiff has not provided the Court a copy of this document revoking such permission.

No. 85-2 at 3.)  The Legal Center informed officials at Bessemer that use of the wrap-around desks did not comply with state law or Colorado Department of Education regulations.  (ECF No. 85-2 at 3 ¶ 8.)  Despite receiving the initial warning from the Legal Center, Bessemer continued to use the wrap-around desks during a follow-up visit from the Legal Center in January 2008.  (ECF No. 85-2 at 3 ¶ 9.)  This lawsuit followed.

## II.    Procedural Background

On April 13, 2009, Ebonie S. commenced this action against Defendants Golden, Trujillo, Bollinger, and unnamed paraprofessionals in their individual and official capacities, and Defendant School District.  (Compl., ECF No. 1.)  On May 7, 2009, Ebonie S. amended her complaint to include paraprofessionals Rivas, Wells, Sanchez, Martinez, and Potter in their individual and official capacities.  (ECF No. 4.)

Defendant Golden filed Defendant Golden's Motion for Summary Judgment and Memorandum Brief in Support of Motion for Summary Judgment, ECF No. 81, on June 1, 2010.  Defendants School District, Trujillo, Bollinger, Rivas, Wells, Sanchez, Martinez, and Potter (collectively "School Defendants") filed Defendants' Motion for Summary Judgment and Memorandum Brief in Support of Motion for Summary Judgment, ECF No. 80, on the same day.  These Motions for Summary Judgment are now ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986).  A movant who bears the burden at

trial must submit evidence to establish the essential elements of its claim or affirmative

defense.  *In re Ribozyme Pharms., Inc. Sec. Litig.,* 209 F. Supp. 2d 1106, 1111 (D.

Colo. 2002).  By contrast, if the movant "does not bear the ultimate burden of

persuasion at trial, it may satisfy its burden at the summary judgment stage by

identifying a lack of evidence for the nonmovant on an essential element of the

nonmovant's claim."  *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th

Cir. 2001) (internal quotations omitted).

The nonmoving party may not rest solely on the allegations in the pleadings, but

instead must designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(e).  An issue

is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When

reviewing a motion for summary judgment, a court must view the evidence in the light

most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715

(10th Cir. 2010).

## DISCUSSION

## I.     Official Capacity Claims

As a preliminary matter, "an official-capacity suit is, in all respects other than

name, to be treated as a suit against the entity.  It is *not* a suit against the official

personally, for the real party in interest is the entity."  *Kentucky v. Graham*, 473 U.S.

159, 166 (1985) (citation omitted).  To this end, several courts have dismissed

individuals sued in their official capacities where the entity whose policies are at issue is

also a defendant.  *Smith v. Brevard County*, 461 F. Supp. 2d 1243 (M.D. Fla. 2006); *Smith v. Bd. of County Comm'rs*, 216 F. Supp. 2d 1209 (D. Kan. 2002); *McLin v. City of Chicago*, 742 F. Supp. 994 (N.D. Ill. 1990); *see also id.*, 742 F. Supp. at 997 ("Because the [entity] is already a defendant, dismissing [the individual defendants] does not prejudice plaintiffs, and it clarifies and streamlines the pleadings.").

While Defendants have not asked for dismissal of the individual defendants in their official capacities, the Court finds that (1) the Court has authority to do so; and (2) justice and efficiency would be served by it.  Further, as Defendant School District would remain a defendant, Plaintiff would suffer no prejudice from such a result.

In their official capacities, therefore, the individual Defendants are superfluous in this matter, and dismissal of Plaintiff's claims against them "is warranted as a matter of judicial economy and efficiency."  *Smith*, 216 F. Supp. 2d at 1219.  The Court finds no prejudice to Plaintiff and therefore dismisses all claims against the individual defendants in their official capacities.

## II.    Fourth Amendment

Plaintiff asserts a claim against Defendants for violation of her Fourth Amendment rights by alleging that while attending Bessemer, Ebonie S. was unconstitutionally seized and restrained on a regular basis by the School District staff. (ECF No. 98 at 2.)  The Fourth Amendment, applicable to the states through the Fourteenth Amendment's Due Process Clause, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV. This prohibition against unreasonable seizures extends to civil, as well as criminal, seizures.  *Jones v. Hunt*,

410 F.3d 1221, 1225 (10th Cir. 2005).  "In carrying out searches and other disciplinary functions pursuant to [school] policies, school officials act as representatives of the State, . . . and they cannot claim . . . immunity from the strictures of the Fourth Amendment."  *New Jersey v. T.L.O.*, 469 U.S. 325, 336-37 (1985).

A seizure occurs for Fourth Amendment purposes when "a reasonable person would have believed that he was not free to leave."  *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988).  In *New Jersey v. T.L.O.*, the Supreme Court applied a relaxed reasonableness standard to determine whether a school search was unreasonable. 469 U.S. at 341.  The Tenth Circuit has held this relaxed reasonableness standard applies in school seizure cases as well.  *Jones*, 410 F.3d at 1228 (citation omitted).  "To balance the students' privacy rights with the schools' custodial and tutelary responsibility for children, a seizure need only be justified at its inception and reasonably related in scope to the circumstances which justified the interference in the first place."  *Couture v. Board of Educ. of the Albuquerque Public Schools*, 535 F.3d 1243, 1250 (10th Cir. 2008) (citations omitted).  "A seizure is 'permissible in its scope when the measures adopted are reasonably related to the objectives of the [seizure] and not excessive[ ] . . . in light of the age and sex of the student and the nature of the infraction.' "  *Id.* (quoting *T.L.O.*, 469 U.S. at 342).  Courts base their Fourth Amendment analysis on the totality of the circumstances.  *United States v. Shareef*, 100 F.3d 1491, 1505 (10th Cir. 1996) (citation omitted).

In *Couture*, the student was a disabled child who was provided an IEP.  535 F.3d at 1252.  Because his behavior was disruptive and dangerous, his IEP included permission by his mother to use a timeout room to teach him behavioral control.  *Id.* at

1251-52.  The timeout room was a small, dimly-lit room adjacent to the classroom.  *Id.* at 1248.  The student was placed in this timeout room when his behavior was violent or disruptive, *id.* at 1247, "for not following directions, giving angry looks, mimicking his peers, and continuously talking," *id.* at 1253.  Sometimes the student would walk into the timeout room on his own, but teachers often forced him into the room and barricaded the door.  *Id.* at 1247-48.  Teachers kept the student in the room until he had been calm for five minutes, even if that meant he was in the room for over an hour at a time.  *Id.* at 1253.

The *Couture* court did not decide if the timeouts were seizures but stated that even if they were, "they were not unreasonable."  *Id.* at 1251.  Because the student's mother had authorized use of the timeout room, the court reasoned that "[n]eglecting to follow the IEP—including failure to use the prescribed timeouts—could have exposed the teachers to liability."  *Id.*  The seizures were held to be justified at the inception because "it was not unreasonable for the teachers to send [the student] to a five-minute timeout in the hope of obtaining his cooperation in the future."  *Id.* at 1253.  Further, the seizures were related in scope because the "timeouts were employed as a technique for behavioral modification, and the length of time was determined accordingly."  *Id.*  Although the timeouts ultimately were ineffective and may have exacerbated the student's behavior, *id.* at 1251, they were held constitutional:

> This was primarily a pedagogical judgment . . . .  There is no allegation that the defendants acted maliciously, but only that they misjudged the circumstances.  Pedagogical misjudgments (even assuming these were misjudgments, we cannot say), do not, without more, expose teachers to liability under the Fourth Amendment.

*Id.* at 1254.

Plaintiff argues the wrap-around desk with restraint bar created a limitation on Ebonie S.'s movement greater than what is inherent in compulsory school attendance, and should therefore be held unconstitutional.  (Pl.'s Resp. Def. Golden's Mot. Summ. J. 9, ECF No. 86.)  Plaintiff regards restraint in the wrap-around desk, which is in the classroom, as more confining than a timeout room where a child can walk around.  (*Id.* at 10.)  Plaintiff further argues that use of the wrap-around desk when Ebonie S. was not in danger of harming herself or others was unjustified and unreasonable.[6]  (ECF No. 85 at 15.)

The Court is bound by the decision in *Couture*.  Just months before withdrawing Ebonie S. from Bessemer, Mary S. discussed use of the wrap-around desk for Ebonie S. and approved its continued use.  (ECF No. 80-5 at 5.)  As in *Couture*, the use of the wrap-around desk was a part of Ebonie S.'s IEP, and would have subjected Defendant Golden and the Paraprofessional Defendants to suit had they not followed the plan. *Couture*, 535 F.3d at 1251.  The Court additionally finds that the wrap-around desk was less restrictive than a timeout room because Ebonie S. was able to continue to participate in classroom activities and benefit from the social aspects of being in a room with her peers.  Additionally, Plaintiff was never subjected to being forced into a separate room and barricaded behind a closed door, apart from all of her classmates. *See Couture*, 535 F.3d at 1247-48.

---

[6] Ebonie S. also argues that Defendants' use of the wrap-around desk violated state statute and Colorado Department of Education regulations and was therefore unconstitutional. (ECF No. 85 at 17.)  The Court disagrees that in this instance the violation of a state statute rises to the level of a constitutional violation.  That a "seizure may have violated state law . . . is irrelevant as long as the standards developed under the Federal Constitution were not offended."  *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1201 (10th Cir. 2009).

Even if there were a seizure of Ebonie S. when a teacher in Defendant Golden's classroom placed Ebonie S. in the wrap-around desk, that "seizure" was not unreasonable.  The actions of the instructors were justified at their inception because the teachers had permission, through the IEP, to utilize the wrap-around desk for behavior modification.  (ECF No. 80-5 at 5.)  The actions complained of were related in scope because Mary S. had approved the use of the wrap-around desk, and because the teachers believed that the wrap-around desk would assist in teaching Ebonie S. to focus, stay on task, and not be disruptive.  (ECF No. 81 at 3 ¶ 9.)

As the above comparison between the actions of the school officials in this case and those taken in *Couture* makes clear, the conduct complained of here was less restrictive, less isolating and less disruptive to Plaintiff than the disciplinary conduct found by the Tenth Circuit to be reasonable for purposes of the Fourth Amendment in *Couture*.  535 F.3d at 1252.  Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's Fourth Amendment claim.

### III.    Liberty Without Due Process

Plaintiff also asserts a claim against Defendants for allegedly violating Ebonie S.'s procedural due process rights by instituting a policy of locking her in a wrap-around desk with a restraining bar without providing process.  (ECF No. 98 at 5.)  The Fourteenth Amendment Due Process Clause provides that no state shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV. The Supreme Court has held that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.' "  *Cleveland Bd. of Educ. v. Loudermill*,

13

470 U.S. 532, 542 (1984) (citation omitted).  A plaintiff alleging a claim under procedural

due process must show (1) that he possessed a constitutionally protected liberty or

property interest, and (2) that he was not afforded an appropriate level of process.

*Couture*, 535 F.3d at 1256 (citation omitted).

In *Goss v. Lopez*, the Supreme Court held that school officials must provide

procedural due process protections to students prior to excluding them from the

educational process.  419 U.S. 565, 576 (1975).  The Court held:

> When complete deprivation of education occurs, such as when a student is
> removed from the school for a lengthy time period, . . . the student at minimum is
> entitled to "notice and . . . some kind of hearing," though the "timing and content
> of the notice and the nature of the hearing will depend on the appropriate
> accommodation of competing interests involved."

*Id.* at 578-79.  Public education is a property interest entitled to protection by the Due

Process Clause.  *Goss*, 419 U.S. at 574.  However, due process is not invoked where

the interference with a student's property interest is *de minimis*.  *Id.* at 576.

In *Goss*, the Court found that a ten day suspension from school constituted "total

exclusion from the educational process," and was therefore unconstitutional.  *Id.*  In

*Couture*, the Tenth Circuit held that use of a timeout room did not violate due process.

"While the child is temporarily removed from the classroom, any loss of a property right

is *de minimis* and not subject to procedural protections."  *Couture*, 535 F.3d at 1257.

The court reasoned that because of the student's disposition, "teaching him self control

was among the most important components of his educational program," and therefore

placing him in the timeout room without notice or a hearing did not infringe on his

property or liberty interest.  *Id.* at 1257-58.

The Court is here likewise bound by the decision in *Couture*.  Unlike the student in *T.L.O.* who was suspended for 10 days and effectively removed from the classroom experience, Ebonie S. was able to benefit from the education provided to the other students in her classroom while sitting in her wrap-around desk and working with a teacher.  (*See* ECF No 81 at 8 ¶ 19.)  As the Tenth Circuit stated in *Couture*, "Timeouts, unlike suspensions or expulsions, are intended to settle down a child while keeping him within close proximity to the classroom; this way, he can resume his education as soon as he has calmed."  535 F.3d at 1257.  Ebonie S. used the wrap-around desk daily for classroom learning.  Only when she was disruptive or failed to focus was the bar used, and then only for a limited time until she regained focus.  (ECF No. 80-2 at 41:22-25.)

The School District's policy of using the wrap-around desk did not remove Ebonie S. from the classroom or take her away from the learning process.  Therefore, the Court finds that any loss of a property right is *de minimis*.  *See Couture*, 535 F.3d at 1257.  Defendants are therefore entitled to judgment as a matter of law on Plaintiff's procedural due process claim.

## IV.   Equal Protection

Plaintiff asserts a claim against Defendants for allegedly violating Ebonie S.'s equal protection rights by utilizing wrap-around desks with restraint bars on her when the wrap-around desks were not also used on non-disabled children at Bessemer. (ECF No. 98 at 8.)  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)

(quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  In order for Plaintiff to state an equal

protection claim, she must allege that the Defendants provided either differential

treatment based on a suspect classification, or denied her a fundamental right.  *Brown*

*v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995).  If Plaintiff is not a member of a protected

class and does not assert a fundamental right, the Court must only determine whether

the alleged discriminatory action has a rational basis.  *Id.*

### Similarly Situated

As a threshold matter, the Tenth Circuit has stated that "an equal protection

violation occurs when the government treats someone differently than another who is

similarly situated."  *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (citation

omitted).  To be "similarly situated" the individuals "must be prima facie identical in all

relevant respects or directly comparable in all material respects; although this is not a

precise formula, it is nonetheless clear that similarly situated individuals must be very

similar indeed."  *U.S. v. Moore*, 543 F.3d 891 (7th Cir. 2008).

Plaintiff argues that Ebonie S. was similarly situated to the non-disabled students

at Bessemer.  (ECF NO. 151 at 5.)  However, the fact that Ebonie S. was in Defendant

Golden's SLIC classroom made her different from non-disabled students at Bessemer.

The Court agrees that there may have been non-disabled children at Bessemer who

failed to stay on task, ignored instructional demands, and wandered around the

classroom during the 2006-07 school year.  Yet those children did not have their own

IEP or behavior support plan.

In arguing for Plaintiff's ADA and the Rehabilitation Act claims, Plaintiff states,

"Ebonie has Down Syndrome, and also suffers from a mood disorder, impulse control

16

disorder, a sleep disorder, hypothyrodism, and Attention Deficit Hyperactivity Disorder. These multiple disabilities prevented her from controlling herself in a way that might be expected of typical students." (ECF No. 98 at 11.) In supporting those claims, Plaintiff establishes that Ebonie S. is not similarly situated to the non-disabled children at Bessemer. Plaintiff cannot assert that she is "similarly situated" to those non-disabled students that she also argues she should not be compared to for behavior purposes.

Plaintiff's equal protection claim must be based on a comparison of Ebonie S.'s peers in Defendant Golden's classroom – that is, the other disabled students in Defendant Golden's classroom. Because Mary S. admits that she saw other students in similar wrap-around desks in Ebonie S.'s classroom at Bessemer, *see* ECF No. 80 at 21, the Court concludes that Ebonie S. received the same treatment as her similarly situated peers.

### Fundamental Right

Plaintiff argues that the use of the wrap-around desk violated Ebonie S.'s fundamental right to be free from involuntary bodily restraint. (ECF No. 151 at 4.) Plaintiff misunderstands what constitutes a "fundamental right" under the Equal Protection Clause. The phrase refers to those particular rights, embodied in the U.S. Constitution, that the Supreme Court has recognized as having fundamental importance. *Okla. Educ. Assn. v. Alcoholic Beverage Laws Enforcement Comm.*, 889 F.2d 929, 932 (10th Cir. 1989). Such rights include the right to procreate, the right to interstate travel, the right to associate to advance political beliefs, and the right to vote. *Id.* The Supreme Court recognizes liberty as a fundamental right in the context of the Fourteenth Amendment's Due Process Clause, but this right has not been extended to

the Equal Protection Clause. *See McDonald v. Chicago*, --- U.S. ---, 130 S. Ct. 3020, 3092 (2010) (Stevens, J., dissenting).

### Suspect Classification

Accordingly, the Court looks to whether Ebonie S., as a disabled child, falls within a suspect classification.  The Supreme Court has held that disabled persons are not a suspect class for purposes of equal protection analysis, and therefore rational basis scrutiny applies. *Cleburne*, 473 U.S. at 446.  Under this deferential standard of review, the court upholds a challenged school policy or decision if it is reasonably related to a legitimate purpose.

### Reasonably Related

Under rationality review, a school's policy will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis" for the policy. *Davoll v. Webb*, 194 F.3d 1116, 1145 (10th Cir. 1999) (internal quotations omitted).  The Court looks to see whether there is "any reasonably conceivable state of facts" that could justify the differential treatment. *City of Herriman v. Bell*, 590 F.3d 1176, 1194 (10th Cir. 2010).  Under this highly deferential test, Bessemer's policy of using the wrap-around desk is reasonable because the desks are used for learning and as a method of behavior modification to teach the children within the classroom to focus.  Further, use of the wrap-around desk with Ebonie S. is reasonable because Mary S. specifically approved its use as a means to keep Ebonie S. in her seat.  (ECF No. 80-5 at 5.) Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's equal protection claim.

V.     **Supervisory Liability**

Plaintiff asserts a claim for supervisory liability against Defendant School District and Supervisory Defendants Bollinger and Trujillo for failure to adequately train Defendant Golden and the Paraprofessional Defendants on the proper use of restraint in the classroom.  (ECF No. 98 at 2.)  "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir.1997).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S. Ct. 1937, 1948 (2009).  Local governments and local government officials in their official capacities are considered 'persons' and therefore liable under § 1983 claims.  *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 n.55 (1978).

As the Tenth Circuit stated:

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .

*Serna v. Colo. Dep't of Corr.,* 455 F.3d 1146, 1151-52 (10th Cir.2006) (citations omitted).

As the Court has previously determined, Plaintiff has not demonstrated that any of the defendants have violated Ebonie S.'s Fourth Amendment, procedural due process, or equal protection rights.  Therefore, Supervisory Defendants Bollinger and

Trujillo and Defendant School District are entitled to judgment as a matter of law on

Plaintiff's supervisory liability claim.

## VII.    Rehabilitation Act and Americans with Disabilities Act

Plaintiff asserts Rehabilitation Act and ADA claims against Defendants for

allegedly intentionally discriminating against Ebonie S. through the School District's

policy of using wrap-around desks with restraint bars on Ebonie S. and her classmates

in the SLIC classroom.  (ECF No. 98 at 11-13.)  The Rehabilitation Act provides that

"[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or

his disability, be excluded from the participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial

assistance. . . ."  29 U.S.C.A. § 794(a).  The Rehabilitation Act defines "program or

activity" to include "all of the operations of . . . a department, agency, special purpose

district, or other instrumentality of a State or of a local government . . . any part of which

is extended Federal financial assistance."  29 U.S.C.A. § 794.  The Rehabilitation Act

served as the model for the ADA.  *Montez v. Romer*, 32 F. Supp. 2d 1235, 1239 (D.

Colo. 1999) (citation omitted).

"Broader than the Rehabilitation Act, the ADA extends similar protections and

prohibitions against discrimination to all state and local government services, programs,

and activities, regardless of whether they receive federal financial assistance."  *Id.*

(citation omitted).  The ADA provides, "no qualified individual with a disability, shall, by

reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination

by any such entity." 42 U.S.C.A. § 12132.  A public entity under the ADA includes "any

State or local government; [and] any department, agency, special purpose district, or

other instrumentality of a State or States or local government." 42 U.S.C.A. § 12131.

"As a general matter, courts have construed the Rehabilitation Act and the ADA

similarly." *Montez*, 32 F. Supp. 2d at 1239 (citation omitted).  Congress has indicated

that the ADA should be interpreted in a manner consistent with the Rehabilitation Act.

*See* 42 U.S.C.A. §§ 12134, 12201.  The Court will therefore review Plaintiff's claims

under the Rehabilitation Act and the ADA together.

### Individual Liability

As an initial matter, "individual defendants in their individual capacities are not

properly subject to suit under the Rehabilitation Act" or the ADA.  *Montez*, 32 F. Supp.

2d at 1241.  Plaintiff's Rehabilitation Act and ADA claims against the individual

defendants in their individual capacities are as a consequence dismissed.

### Exhaustion

The IDEA states:

Nothing in this chapter shall be construed to restrict or limit the rights,
procedures, and remedies available under the Constitution, the Americans with
Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation
Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the
rights of children with disabilities, except that before the filing of a civil action
under such laws seeking relief that is also available under this subchapter, the
procedures under subsections (f) and (g) shall be exhausted to the same extent
as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415(l).

The Tenth Circuit precludes parties from bringing educational claims under the Rehabilitation Act and ADA if they have not exhausted the IDEA's administrative procedures and relief is available under the IDEA. *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1267 (10th Cir. 2007). However, the Tenth Circuit does not require exhaustion of discrimination claims under the Rehabilitation Act and ADA. *Id.* Plaintiff's Rehabilitation Act and ADA claims are based on the School District's practice of using wrap-around desks with restraint bars only in classrooms for disabled children. (ECF No. 4 at ¶ 64.) The Court finds this to be a discrimination-based claim instead of an education-based claim that could not appropriately be addressed through the IDEA administrative review process. Accordingly, Plaintiff's Rehabilitation and ADA claims are not precluded for failure to exhaust administrative remedies.[7]

### *Intentional Discrimination*

To state a claim for relief, Plaintiff must show intentional discrimination by Defendants. However, intentional discrimination does not require proof of "personal animosity or ill will." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). Instead, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights. *Id.* at 1153. "Federal agencies and commentators on the plight of the handicapped similarly have found that discrimination

---

[7] Defendants also argue Plaintiff's claims are duplicative of claims previously addressed during the IDEA due process hearing. (ECF No. 80 at 26.) The Court disagrees, finding that the claims addressed in this suit were not previously reviewed by the due process hearing officer. Defendants' statute of limitations defense is likewise without merit because the Court finds that Plaintiff's claims are not based on an IEP violation.

against the handicapped is primarily the result of apathetic attitudes rather than affirmative animus." *Alexander v. Choate*, 469 U.S. 287, 296 (1985).

Plaintiff argues that because the secure wrap-around desks with restraint bars were only found in the special education rooms where disabled children similar to Ebonie S. are located, Defendant School District's actions are "patently discriminatory." (Final Pretrial Order 11, ECF No. 98.)  Further, Plaintiff argues that restraint was used only on the children with disabilities, for actions that were characteristic of their disabilities, and which served no educational purposes.  (ECF No. 4 at ¶ 64.) Defendants' argue Plaintiff has not met her burden in showing intentional discrimination due to Ebonie S.'s disability.  (ECF No. 80 at 30.)

Taking the facts in the light most favorable to the non-moving party, the Court finds that there is a genuine dispute of material fact as to whether Ebonie S. was discriminated against through Defendant School District's policy of using the wrap-around desks with restraint bars in classrooms for disabled children.  Defendants' motion for summary judgment on the Rehabilitation Act and ADA claims is therefore denied as to the sole remaining Defendant, the School District.

## CONCLUSION

It is therefore ORDERED that Defendant Golden's Motion for Summary Judgment, ECF No. 81, is GRANTED in whole.  It is further ORDERED that the School Defendants' Motion for Summary Judgment, ECF NO. 80, is GRANTED in part and DENIED in part as follows:

### *Official Capacity Claims*

Plaintiff's claims against Defendants Golden, Trujillo, Bollinger, Rivas, Wells, Sanchez, Martinez, and Potter in their official capacities are DISMISSED with prejudice.

### *Fourth Amendment*

The School Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment claim is GRANTED.

### *Liberty Without Due Process*

The School Defendants' Motion for Summary Judgment on Plaintiff's procedural due process claim is GRANTED.

### *Equal Protection*

The School Defendants' Motion for Summary Judgment on Plaintiff's equal protection claim is GRANTED.

### *Supervisory Liability*

Defendant School District and Supervisory Defendants Bollinger and Trujillo's Motion for Summary Judgment on Plaintiff's supervisory liability claim is GRANTED.

### *§ 504 of the Rehabilitation Act and Americans with Disabilities Act*

The School Defendants' Motion for Summary Judgment on Plaintiff's Rehabilitation Act and ADA claims against the individual defendants in their individual capacities is GRANTED; and

The School Defendants' Motion for Summary Judgment on the Rehabilitation Act and ADA claims against the School District is DENIED.

Dated this 3rd day of May, 2011.

BY THE COURT:

William J. Martínez
United States District Judge