**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:09-cv-00858-CMA-MEH

EBONIE S., a child, by her mother and next friend, MARY S.,

    Plaintiff,

vs.

PUEBLO SCHOOL DISTRICT 60,
MARILYN GOLDEN, Teacher, in her official and individual capacities,
GARY TRUJILLO, Principal, in his official and individual capacities,
MARY JO BOLLINGER, Executive Director of Exceptional Student Services, in her official and individual capacities, and
LOUISE RIVAS, SHARRON WELLS, ISABEL SANCHEZ, AUDRA MARTINEZ, and KRISTEN POTTER, Paraprofessionals, in their official and individual capacities,

    Defendants.

_____

**PLAINTIFF'S MOTION FOR RECONSIDERATION OR FOR RULE 54(b) CERTIFICATION OR, IN THE ALTERNATIVE, CERTIFICATION OF INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND FOR STAY OF PROCEEDINGS**
_____

On May 3, 2011, the Court entered an Order on Defendants' motions for summary judgment dismissing all but two of Plaintiff's claims for relief against Pueblo School District 60 ("District 60") and dismissing all claims against all of the other Defendants (the "Order") [Docket # 159]. Plaintiff respectfully requests that the Court reconsider its Order for the reasons stated below and reinstate all of Plaintiff's claims against all Defendants but, at a minimum, reinstate all of Plaintiff's claims against District 60 before the trial set for June 6, 2011. If the Court declines to do so, Plaintiff respectfully requests that the Court either certify its Order as a final and appealable

order pursuant to Fed. R. Civ. P. 54(b) or certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiff also requests that the Court stay the trial and all trial proceedings on its two remaining claims against District 60 pending resolution of any appeal to the Tenth Circuit.

## CERTIFICATION PURSUANT TO D.C.COLO.L.CIVR. 7.1(A)

Pursuant to D.C.COLO.LCivR 7.1(A), the undersigned certifies that counsel for Plaintiff conferred with counsel for Defendants concerning the relief sought in this motion. Defendants oppose the relief Plaintiff seeks.

### I.     REQUEST FOR RECONSIDERATION

#### A.     Introduction.

In its Order, the Court dismissed Plaintiff's claims for violation of the Fourth Amendment, denial of Procedural Due Process under the Fourteenth Amendment, violation of the Equal Protection Clause of the Fourteenth Amendment and for Supervisory Liability, and its claims against all of the Defendants in their official and individual capacities, except for District 60. In so ruling, the Court erroneously applied the Tenth Circuit's decision in *Couture v. Board of Educ. of the Albuquerque Public Schools*, 535 F.3d 1243 (10th Cir. 2008) and improperly determined disputed issues of fact against Plaintiff, the non-moving party. Thus, Plaintiff respectfully requests that the Court reconsider its Order and reinstate all claims against all Defendants for trial.

#### B.     *Couture* Is Not Controlling.

*Couture* is distinguishable from this case in many significant respects. As a result, *Couture* is not controlling and does not mandate the dismissal of Plaintiff's

claims.  First, *Couture* did not involve the violation of state and federal law which occurred here.[1]  *U.S. v. Mikulski*, 317 F.3d 1228, 1232 (10th Cir. 2003) ("[T]he question of compliance with state law may well be relevant in determining whether conduct was reasonable for Fourth Amendment Purposes[.]");  *Mills v. Rogers*, 457 U.S. 291, 300 (1982) (state created liberty interests entitled to protection of Due Process Clause).

Here, Defendants routinely placed Plaintiff in a wraparound desk with a bar behind her back and locked in place with barrel bolts in violation of federal and state law.  42 U.S.C. Section 15009, which is entitled Rights of Individuals with Developmental Disabilities, requires "provision of care that is free of … violation of legal and human rights" of individuals with developmental disabilities and specifically prohibits the use of physical restraint on those with developmental disabilities "unless absolutely necessary to ensure the immediate physical safety of the individual or others."  42 U.S.C. § 15009(3)(B)(i) and (iii).  This section further prohibits the use of restraint as a punishment.  *Id.*  The Colorado Protection of Persons from Restraint Act similarly prohibits the use of restraint, including a mechanical restraint, at any time except in the event of an emergency.  C.R.S. § 26-20-101, *et seq.* (the "Act").  "'Restraint' means any method or device used to involuntarily limit freedom of movement, including but not limited to bodily physical force, mechanical devices, or chemicals."  C.R.S. § 26-20-

---

[1] In its Order, the Court disagreed that "in this instance the violation of a state statute rises to the level of a constitutional violation."  Order at 12, fn. 6 citing *Swanson v. Town of Mountain View Colo.*, 577 F.3d 1196, 1201 (10th Cir. 2009).  But *Swanson* acknowledges that "Tenth Circuit law holds that compliance with state law may be relevant to the court's Fourth Amendment reasonableness analysis."  *Id.* at 1203.  Further, in the context of prison inmates, the Supreme Court has held that freedom from restraint is one area where state law may create federally protected liberty interests. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

102(6).  "Mechanical restraint means a physical device used to involuntarily restrict the movement of an individual or the movement or normal function of a portion of his or her body."  C.R.S. § 26-20-102(4).  Under this statute, restraint may only be used in cases of emergency.  C.R.S. § 26-20-103(1)(a).  "Emergency means a serious, probable, imminent threat of bodily harm to self or others where there is the present ability to effect such bodily harm."  C.R.S. § 26-20-102(3).  These provisions apply to school districts.  C.R.S. § 26-20-102(1)(a)(II).

The Colorado Department of Education ("CDE") promulgated regulations entitled Rules for the Administration of the Protection of Persons from Restraint Act, 1 CCR 301-45 (the "CDE Rules") which incorporate the terms and definitions of the Protection of Persons from Restraint Act and make them directly applicable in the school/educational setting.  The CDE Rules specifically provide that:  "Restraints must never be used as punitive form of discipline or as a threat to control or gain compliance of a student's behavior."  1 CCR 301-45; 2620-R-2.01(4) (all citations are to the regulations in effect in 2000).  In this case, there is no dispute that:  (1) the restraining desk used on Plaintiff involuntarily restricted her movement or the movement or function of a portion of her body; (2) there were never emergencies that justified the use of restraint with Ebonie; and (3) the mechanical restraint desk was used for discipline or to gain control or compliance of Plaintiff's behavior, all of which is in direct violation of federal and Colorado law.  This crucial evidence of a violation of federal and state law was not present in *Couture*.  *Couture*, therefore, is not applicable, much less controlling, for that reason alone.

Rather, in *Couture*, the district court found and the Tenth Circuit acknowledged that "generally, the timeout room complied with the standards set forth by the Albuquerque Public Schools." 535 F.3d at 1248. In contrast here, however, the mechanical restraint desk not only violated federal law, Colorado statute, and the CDE Rules, but it also violated the policy District 60 adopted in February 2007, which mirrors the CDE Rules and prohibits restraint of students except in the event of emergency.

Further, the use of the mechanical restraint desk with Ebonie was not "justified at its inception" or "reasonably related in scope to the circumstances which justified the interference in the first place," as was the case in *Couture*. *See* 535 F.3d at 1252-53. The restraint violated the law at the outset and throughout its use. An illegal act cannot be "justified at its inception" or justifiable or reasonable as a matter of law at any time. Similarly, the use of the mechanical restraint desk with Ebonie cannot be deemed to be "reasonably related to the school's objective of behavior modification" as in *Couture,* because federal and Colorado law specifically prohibit the use of mechanical restraint, or any form of restraint as a punishment or "to gain compliance of a student's behavior." 1 CCR 301-45, 2620-R-2l.01(4).

Additionally, in *Couture*, the Court found the student's behavior was threatening and sometimes violent, and that he was a danger to himself, his teacher and his fellow students. In this case, there is no evidence that Ebonie ever posed a danger to herself or anyone else at any time. In fact, the Court properly found that "Ebonie S. was never violent or dangerous while attending Bessemer." Order at 6.

In *Couture*, the court found that the defendants' continued employment of the timeout room over a two-month period was reasonable because: (1) the defendants tried positive reinforcements and other interventions first but were unsuccessful; (2) the student's IEP described the use of the timeout room in detail, such that there was a predetermined plan with respect to its use, which the Court found to be appropriate; (3) the student's mother specifically approved the use of the timeout room for behavior modification in a writing which she signed and it was *undisputed* that she gave permission for its use; (4) the mother was given daily written notice when the timeout room was used with her son; (5) only properly-trained personnel were allowed to place the student in the timeout room; and (6) after a three-day due process hearing, the impartial hearing officer "found no evidence of inadequate instruction or a denial of a FAPE [Free Appropriate Public Education], and no evidence of discrimination or exclusion from participation in the educational process." 535 F.2d at 1247-48.

In this case, there is no evidence that Defendants used positive reinforcement or any other interventions before placing Ebonie in the illegal mechanical restraint desk. Further, using the mechanical restraint desk was not an informed, intended and planned part of Ebonie's IEP. Rather, the teachers, paraprofessionals and administrators at Bessemer: (1) never explained to Mary S. that the mechanical restraint desk was illegal and could not be used to discipline, control or gain compliance of a student as they intended to do; (2) never explained how, when, or why Defendants intended to use the restraint desk with Ebonie other than to keep her in her seat; (3) never obtained written, signed, and fully informed consent from Mary S. to use the mechanical restraint desk

with Ebonie as required by law and ignored her verbal and written direction to cease using the restraining desk with Ebonie at any time for any reason; (4) never had the restraint administered by "those who have received training in accordance with Section 2.03 of these [CDE] Rules," 1 CCR-301-45(1), 2620-R-2.02(1)(a)(iv); and (5) never documented episodes of restraint, informed Mary S. on the day the mechanical restraint desk was used, prepared the required reports, or conducted a review of the restraint desk as required by the CDE Rules. *See* 1 CCR-301-45, 2620-R-2.04 and 2.05. *See* Response to Mot. for Summary Judgment, Disputed Facts ¶¶ 5-7, 10-12, 23 [Docket # 85]. Again, these failures constitute direct violations of Colorado law, as well as federal law, and are a basis for finding constitutional violations that were not present in *Couture*. *See, e.g.*, 1 CCR 301-45, 2620-R-2.02(1)(a)(v) ("a student's behavior plan or IEP must address the specific circumstances, procedures and staff involved if there is a possibility that restraint might be used as part of crisis management."). These facts also show that Ebonie was denied procedural due process before the mechanical restraint desk was used.

In *Couture*, the court concluded that seizures were "reasonable" because they were part of an appropriate education plan. In direct contrast to the hearing officer's findings in *Couture,* the Impartial Hearing Officer concluded at the end of Ebonie's due process hearing in this matter that:

> While at Bessemer and Columbian the Student was routinely placed in a secure wrap around table which wraps around the front and sides of the child sitting in it. The table is bolted to a floor board and a bar can be added to the back of the table, with an option to be locked in place, which limits the mobility of the child. The Student sat in a chair that was not

> bolted to the floor, but the child was restrained by the desk in front and to the sides when the bar was placed behind the student. ***That table with locking bars is a mechanical restraint that violated the Colorado Restraint Act and the Colorado Department of Education Guidelines for the Administration of the Protection of Persons From Restraint Act***. IHO Dec. p. 5.
>
> ***. . . . The District never addressed the Student's consistent failure to meet her educational and behavioral goals. Apparently, the IEP team did not expect the Student to make any progress.  The District was content with the Student not making any measurable progress***.  The ability to evaluate whether the services provided are actually effective is an essential component of the provision of an appropriate education. The District did not attempt to create measurable goals for The Student; it did not attempt to measure her progress; and it did not reevaluate its program when The Student failed to progress.  . . .  IHO Dec. p. 15-16.
>
> WHEREFORE, The IHO has concluded that the District did not make a FAPE available to the Student during the 2006-2007, 2007-2008 school years and during the fall of 2008 … .  IHO Dec. p. 22. (emphasis added).

See IHO Order, attached as **Exh. A**; see also Docket # 85 at 29 n.3 (referencing IHO Order).  Thus, there are numerous meaningful distinctions between this case and *Couture*.  *Couture* does not tie the Court's hands or require entry of summary judgment on Plaintiff's constitutional claims.

### C. Consent Is a Disputed Issue of Fact.

Mary S. did not give informed consent to use of the mechanical restraint desk with Ebonie.  She never provided signed or written consent for use of the restraint desk at any time.  In fact, she testified that subsequent to the December 2006 IEP session, she told Bessemer teachers and administrators to stop using the restraint desk with

Ebonie at any time for any reason and even though they agreed, they continued to do so. The written record of their agreement to stop using the restraint desk was in the possession of Bessemer Academy, *not* Mary S. Because this document was in the possession of Bessemer Academy, the Plaintiff could not provide it to the Court as suggested in its Order. Order at 6, fn. 5. Further, consent to an illegal act should not be deemed valid consent, particularly in the context of summary judgment. Accordingly, whether Mary S. could or did give consent to the use of the restraint desk, at a minimum, is a contested issue of fact which cannot be determined by the trial court against the Plaintiff as the non-moving party on summary judgment.[2] *See Abercrombie v. City of Catoosa, Okl.* 896 F.2d 1228, 1230 (10th Cir. 1990) ("Summary judgment should be granted only if 'there is no genuine issue as to any material fact" and "[w]hen applying this standard, we are to examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."); *see also* Docket # 85 at 6 ¶ 2 (denying consent and citing record support in response to proposed statement of undisputed material facts). Accordingly, Plaintiff respectfully requests that the Court reconsider its Order and reinstate all of her claims against all of the Defendants for trial.

## II.     MOTION TO CERTIFY ORDER AS FINAL UNDER FED. R. CIV. P. 54(b)

If the Court does not reconsider its Order, Plaintiff respectfully requests that the Court enter and certify its Order as final pursuant to Fed. R. Civ. P. 54(b) so that Plaintiff may immediately appeal it. Rule 54(b) states:

---

[2] *See U.S. v. Guerrero-Sanchez*, 263 F.3d 1155, 1162 (10th Cir. 2001) ("Whether voluntary consent was given is a question of fact, determined by the totality of the circumstances").

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

The purpose of Rule 54(b) "'is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available.'" *Oklahoma Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1241 (10th Cir. 2001) (*quoting* 10 Charles A. Wright *et al.*, *Federal Practice and Procedure*: Civil 2d § 2654 at 33 (1982)). The rule is also intended to avoid "piecemeal appeals." *Id.* The overall impact of Rule 54(b), therefore, is to "strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." *Id.* (*quoting* 10 Charles A. Wright *et al.*, *Federal Practice and Procedure: Civil 2d* § 2654 at 35 (1982)). Put another way, a district court's role is to act as a "dispatcher" weighing the competing policies of avoiding piecemeal appeals "against inequities that could result from delaying an appeal." *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005); *see also Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F. Supp. 2d 1252, 1270 (D. Colo. 2003) (a court considering a Rule 54(b) motion should consider all "judicial administrative interests" and "equities involved").

A district court may certify a claim for appeal under Rule 54(b) if two conditions are met. First, the district court must conclude that the order it is certifying is a final order as to an entire claim or party. *Curtiss-Wright Corp.*, 446 U.S. 1, 13 (1980); Fed.

R. Civ. P. 54(b). Second, the district court must find that there is no just reason to delay review of the final order until it has ruled on all the other claims presented in the litigation. *Id.* Both conditions exist here.

### A. The Court's Order is a Final Order.

The Court's May 3, 2011 Order satisfies Rule 54(b)'s requirement of a final judgment on at least one claim. To be considered "final" for purposes of Rule 54(b), the order must be "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Atwell v. Gabow,* No. 06-cv-02262, 2009 WL 112492, *3 (D. Colo. Jan. 15, 2009) (citations omitted), *aff'd*, 311 Fed. Appx. 122, 2009 WL 294366 (10th Cir. Feb. 9, 2009). Rule 54(b)'s finality requirement is satisfied "if the claims resolved are distinct and separable from the claims left unresolved." *Old Republic Ins. Co. v. Durango Air Services, Inc.*, 283 F.3d 1222, 1225 (10th Cir. 2002) (citations omitted). The constitutional claims dismissed by the Court as to all Defendants are distinct and separable from the statutory Rehabilitation Act and ADA claims remaining against District 60. Because the Court entered summary judgment in the individual Defendants' favor on all claims and dismissed all but two claims against District 60, its Order is a final order for purposes of Rule 54(b) as to all dismissed claims.

### B. There Is No Just Reason to Delay the Entry of a Final Judgment.

Again, "[t]he purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available." *Oklahoma Turnpike Auth.*, 259 F.3d at 1241 (internal citations omitted).

Here, an immediate appeal would avoid the injustice and incalculable burden of requiring Plaintiff, a 10-year old girl with Down Syndrome and other disabilities and her single mother, a social worker in Pueblo, to litigate through trial two claims against one defendant when the Tenth Circuit may well view the facts and circumstances in this case to be distinguishable from *Couture* and remand for a full trial on all of her claims against some or all of the Defendants.  *See Gas-A-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1105 (10th Cir. 1973) ("refusal to hear the Rule 54(b) order might create undue hardship on appellants which outweigh any inconvenience from the delay of the trial."); *Pizza Management, Inc. v. Pizza Hut, Inc.*, No. 86-1664-C, 1990 WL 112967, *7 (D. Kan. July 20, 1990) (same).  Indeed, Rule 54(b) certification would be in the best interests of all the litigants and the Court to avoid the risk that the case or any of the claims herein will be tried twice.

Therefore, Plaintiffs respectfully request that this Court certify as final its May 3, 2011 Order pursuant to Rule 54(b) and stay the trial and all trial proceedings with respect to the two remaining claims against District 60 to allow Plaintiff to appeal the Court's Order to the Tenth Circuit and until completion of all appellate proceedings.[3]

---

[3] To the extent the standards set forth in *Niken v. Holder*, --- U.S. ---, 129 S. Ct. 1749, 1760 (2009) are applicable to Plaintiff's request for a stay (and Plaintiff does not believe they are; *see Weigel v. Broad*, 544 F.3d 1143, 1147 (10th Cir. 2008) (certifying Section 1983 claims for appeal pursuant to Rule 54(b) and staying matter pending appeal); *Kennedy v. Ford Motor Co.*, 2003 WL 22476273, 4 (10th Cir. 2003) (certifying summary judgment order and staying all proceedings on counterclaims)), Plaintiff satisfies them: (1) for the reasons stated above, Plaintiff believe she is likely to establish on appeal that *Couture* is not controlling; (2) she will be irreparably injured if forced to try the case more than once; (3) a stay would not substantially injure Defendant because Plaintiff may appeal dismissal of her constitutional claims regardless of the outcome at trial; and (4) the public interest will be served in conserving judicial resources and avoiding the likelihood of multiple trials.

### III. IN THE ALTERNATIVE, PLAINTIFF REQUESTS CERTIFICATION NECESSARY TO PERMIT AN APPEAL UNDER 28 U.S.C. § 1292(b)

If the Court does not reconsider its Order and reinstate Plaintiff's claims or enter a Rule 54(b) certification, Plaintiff respectfully requests that the Court: (1) amend its Order to include the certification necessary to permit an interlocutory appeal from the Order with regard to the claims and parties dismissed therein; and (2) stay the proceedings with regard to Plaintiff's remaining claims under Section 504 of The Rehabilitation Act and the ADA against the District pending appeal to the Tenth Circuit Court of Appeals. 28 U.S.C. §1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

There are four criteria to be met before an issue may be certified for appeal: (1) the action must be a "civil action"; (2) the court must conclude that the order from which the appeal is to be taken involves a "controlling question of law"; (3) upon which there exists "substantial ground for difference of opinion"; and (4) the court must believe that "immediate appeal from the order may materially advance the ultimate termination

-13-

of the litigation." *In re Grand Jury Proceedings June 1991*, 767 F. Supp. 222, 223 (D. Colo. 1991).

### A. This Case is a "Civil Action".

The first requirement of §1292(b) is satisfied because this case is a "civil action."

### B. The Issue for Appeal Involves a "Controlling Question of Law".

The second requirement of §1292(b) is satisfied because the issues which Plaintiff seeks to certify involve controlling questions of law. A question is "controlling" within the meaning of Section 1292(b) when "its incorrect disposition would require reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district court proceedings." 16 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3930, 423-24 (2d ed. 2010); *see also*, *Pueblo Country Club v. AXA Corporate Solutions Ins. Co.*, No. 05-cv-01296, 2007 WL 1576348, *3 (D. Colo. May 31, 2007) ("A question of law is 'controlling' if it has the potential for substantially accelerating the disposition of the litigation."). Here, whether the Tenth Circuit's decision in *Couture* mandates dismissal of Plaintiff's claims is a controlling question of law. Further, the rulings subject to certification will obviate the potential need for multiple trials which will accelerate the full and final disposition of this case.

### C. There is a "Substantial Ground for Difference of Opinion".

As discussed in detail above, there is a substantial ground for difference of opinion regarding whether the Court properly dismissed Plaintiff's claims for relief, including but not limited to, whether *Couture* is, indeed, controlling and dispositive

precedent and whether Mary S. gave consent which, again, is a disputed issue of fact which cannot be resolved against her.

### D. An Immediate Appeal will "Materially Advance" this Litigation.

An immediate appeal will materially advance this litigation because it will ensure that all claims that are recognized as proper by the Tenth Circuit are tried together, which promotes judicial efficiency and economy without prejudice to any party. Otherwise, Ebonie and Mary S. will be subjected to piecemeal litigation and face the protracted, expensive, inefficient and prejudicial prospect of multiple trials and appeals in this matter. Accordingly, Plaintiff alternatively requests that the Court amend its May 3, 2011 Order to certify the findings and rulings therein for an interlocutory appeal pursuant to § 1292(b) and stay the trial and all trial proceedings until resolution or remand of the case by the Tenth Circuit.

## CONCLUSION

WHEREFORE, Plaintiff's request that the Court reconsider its May 3, 2011 Order and reinstate all claims dismissed therein as to all Defendants or, at a minimum, as to Pueblo District 60 before the June 6, 2011 trial date; or enter and certify its May 3, 2011 Order as final under Fed. R. Civ. P. 54(b). Alternatively, Plaintiff requests that the Court certify its order for interlocutory appeal to the Tenth Circuit pursuant to 28 U.S.C. §1292(b). If the Court certifies its Order pursuant to Fed. R. Civ. P. 54(b) or 28 U.S.C. § 1292(b), Plaintiff requests that all proceedings in the district court be stayed until the resolution of her appeal in the Tenth Circuit or remand to the district court.

Dated May 5, 2011.

Respectfully submitted,

*s/Jonathan S. Bender*_____
Jonathan S. Bender
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Post Office Box 8749
Denver, Colorado  80201-8749
Phone: (303) 295-8456
Fax: (303) 383-5651
jsbender@hollandhart.com

Maureen Reidy Witt
HOLLAND & HART LLP
6380 South Fiddlers Green Circle, Suite 500
Greenwood Village, CO  80111
Phone: (303) 290-1629
Fax: (303) 975-5301
mwitt@hollandhart.com

Katherine Gerland
Law Offices of Louise Bouzari, LLC
7887 E. Belleview, Suite 1100
Englewood, CO 80111
Phone: (303) 228-1616
Fax: (303) 771-0460
kate@bouzarilaw.com

**ATTORNEYS FOR PLAINTIFF**

-16-

-17-

### CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2011, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| William J. Kowalski | WKowalski@celaw.com |
| Megan Pound | MPound@celaw.com |
| Sonja S. McKenzie | SMcKenzie@sgrllc.com |
| Sarah Schreiber | SSchreiber@sgrllc.com |

*s/Jonathan S. Bender*

5100854_5.DOC

# EXHIBIT A