**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-00858-WJM-MEH

EBONIE S., a child, by her mother and next friend, MARY S.,

    Plaintiff,

v.

PUEBLO SCHOOL DISTRICT 60,

    Defendant.

---

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS *IN LIMINE*

---

Plaintiff Ebonie S. ("Plaintiff"), by her mother and next friend, Mary S., brings claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 794, *et seq.*, against Defendant Pueblo School District 60 ("Defendant"),[1] arising out of Defendant's alleged use of a restraint desk on Plaintiff at school. (ECF No. 267 at 4-8.) The trial of this action is scheduled to commence on March 16, 2015, with the Final Trial Preparation Conference set for February 27, 2015. (ECF No. 272.)

This matter is before the Court on the parties' Motions *in Limine* ("Motions"). (ECF Nos. 281 & 285.) For the reasons set forth below, the Motions are granted in part and denied in part.

---

[1] Plaintiff's constitutional claims under 42 U.S.C. § 1983 against Defendant and her claims against eight individuals formerly named as defendants were dismissed from the case on May 3, 2011. (*See* ECF No. 159, *aff'd*, ECF No. 230.)

## I. ANALYSIS

Plaintiff's Motion seeks to preclude the following evidence from being admitted at trial: (1) reports related to Plaintiff's daycare provider discussing Plaintiff's broken arm and other details about the daycare; (2) a Pueblo Police Department report regarding Plaintiff's broken arm; (3) evidence regarding Plaintiff's "zipper bed"; and (4) evidence of Plaintiff's receipt of any payments from collateral sources. (ECF No. 285.) Defendant's Motion seeks to preclude the following: (1) evidence regarding alleged violations of the Colorado Protection of Persons from Restraint Act ("CPPRA"); (2) evidence of the corresponding Colorado Department of Education Guidelines ("Guidelines"); (3) evidence of Defendant's School Board Policy regarding restraint; (4) evidence related to the investigation and report conducted by the Legal Center for People with Disabilities and Older People ("Legal Center Report"); (5) evidence of Defendant's subsequent removal and disuse of the restraining bars from the desks; (6) evidence of how the restraint desks were used with other students; (7) evidence regarding Plaintiff's complaint and due process hearing under the Individuals with Disabilities Education Act ("IDEA"); and (8) evidence regarding Plaintiff's broken arm. (ECF No. 281.) As several of the challenged areas in each party's Motion overlap, the Court will aggregate the issues by topic, and will address each category of evidence below.

**A.  Broken Arm**

Defendant seeks to preclude the admission of evidence and related argument regarding Plaintiff's broken arm, arguing that it is irrelevant to the use of the restraint

desk and that it will unduly prejudice Defendant by implying to the jury some connection between Defendant's conduct and Plaintiff's broken arm, when no evidence of any such connection exists. (ECF No. 281 at 12.) If the Court denies this Motion and such evidence is admitted, Defendant will seek to rebut any inference that it was responsible for Plaintiff's injury by introducing evidence of a 2007 report by the Department of Human Services ("DHS") regarding Plaintiff's daycare provider, Betty Quintana, as well as a report by the Pueblo Police Department regarding its investigation into Plaintiff's broken arm. (ECF No. 294 at 2-6.) In her Motion, Plaintiff seeks to preclude the admission of Defendant's proposed rebuttal evidence, arguing that it is irrelevant, prejudicial, and usurps the jury's role as factfinder.[2] (ECF No. 285 at 3-6.)

The first issue is whether Plaintiff's broken arm is relevant. Plaintiff agrees that "the cause of the broken arm is not at issue," as she does not intend to prove that her arm was broken at school or that it resulted from Defendant's use of the desk, nor does she seek damages for her broken arm. (ECF No. 285 at 4 n.2.) However, Plaintiff argues that the fact that her arm was broken is relevant to the frequency of Defendant's use of the desk, because Defendant used the desk on Plaintiff on the day her arm was broken despite her visible distress. (*Id.*) Plaintiff also contends that her broken arm provides context for Mary S.'s discovery that day that the restraint desk was being used on Plaintiff after Defendant allegedly stated that it would cease using the desk. (ECF No. 293 at 8.)

---

[2] Plaintiff also seeks to preclude the introduction of another DHS report from 2001 regarding Plaintiff's daycare provider. (ECF No. 285 at 3-4.) However, Defendant agrees that it will not introduce that report into evidence. (ECF No. 294 at 2.) Accordingly, Plaintiff's Motion is denied as moot as to the 2001 DHS report.

3

Under the Federal Rules of Evidence, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  The Court agrees with Plaintiff that the fact that she had a broken arm is relevant here, for the reasons Plaintiff cites.

While relevant evidence is generally admissible at trial, Fed. R. Evid. 402, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," Fed. R. Evid. 403.  The Court is mindful of Defendant's concerns regarding the possibility that the jury will unfairly infer that Defendant is responsible for Plaintiff's broken arm.  Thus, the Court is sympathetic to Defendant's argument under Rule 403.  However, the Court does not find that the probative value of the evidence of the broken arm is substantially outweighed by the possibility of unfair prejudice.  Furthermore, the Court cannot allow Defendant to introduce its proposed rebuttal evidence, as it is rife with irrelevant, confusing, and misleading information.  Defendant's only argument for the admissibility of such evidence is to defeat any inference of responsibility for the injury, and thus its probative value is limited.  (ECF No. 294 at 5-6.)

Given Plaintiff's agreement that the cause of her broken arm is not at issue and she does not seek damages for it or intend to prove that Defendant is responsible for it, the Court finds that the issue can most expediently be resolved by permitting the introduction of evidence of the fact of Plaintiff's broken arm, and providing the jury with a factual stipulation or limiting instruction that Defendant is not liable for causing the

broken arm. As such, the parties are strongly encouraged to confer and reach an agreement on the content of a factual stipulation regarding this issue. At the Final Trial Preparation Conference, the Court will inquire as to the parties' progress on this matter. If the parties are unable to agree to such a stipulation, the Court will craft a limiting instruction to advise the jury that Defendant is not responsible for Plaintiff's broken arm.

With the inclusion of a factual stipulation or limiting instruction regarding the cause of the broken arm, the Court will allow the introduction of evidence of the fact of Plaintiff's injury, but will not permit the evidence of the DHS reports on the daycare or the Pueblo Police Department report on the broken arm. Accordingly, Defendant's Motion is denied as to the evidence of the broken arm, with the addition of a factual stipulation or limiting instruction as to the cause of the injury, and Plaintiff's Motion is granted in part as to the evidence of the 2007 DHS report and Pueblo Police Department report.

**B.     Zipper Bed**

Plaintiff also seeks to preclude evidence from being admitted at trial regarding her use at home of a "zipper bed", which has a fabric enclosure that zips shut. (ECF No. 285 at 6-7.) Defendant contends that the zipper bed is comparative evidence to show that Plaintiff had special needs requiring physical modifications, but Plaintiff argues that the zipper bed is not a comparable restraint to the restraint desk used by Defendant at school, and that Defendant's attempt to introduce evidence of the zipper bed will subject her to unfair prejudice. (*Id.*; ECF No. 294 at 7.)

Plaintiff's attempts to demonstrate that the zipper bed is not comparable evidence—such as citing evidence that the zipper bed was medically prescribed, and

5

expert testimony that the zipper bed is not a restraint—are more appropriate for consideration by the jury. (*See* ECF No. 285 at 6.) The evidence of the zipper bed meets the low bar for relevance under Rule 401, and Plaintiff's arguments do not establish prejudice or a waste of time sufficient to substantially outweigh its probative value under Rule 403. Accordingly, Plaintiff's Motion is denied as to the evidence relating to the zipper bed.

**C.      CPPRA, Guidelines, and School Board Policy**

Defendant seeks to preclude the admission of evidence related to the alleged violation of the CPPRA, the Guidelines, and the School Board Policy. (ECF No. 281 at 1-4, 7-9.) With respect to the CPPRA, Defendant argues that there is no alleged violation of state law at issue, as Plaintiff's claims only allege violations of federal rights. (*Id.* at 1-4.) Defendant does not make a separate argument as to the Guidelines and appears to suggest that the same argument applies, since the Guidelines are based on the CPPRA. (*See id.*) As to the School Board Policy, Defendant notes that it was drafted by a task force beginning in September 2006 and approved in February 2007, but contends that it was not in effect during the 2006-2007 school year challenged in the instant case because training and implementation of the School Board Policy was not scheduled to occur until August 2007. (*Id.* at 7-9.)

With regard to the CPPRA, the Court agrees with Defendant that no state law violation is at issue in this case. While Defendant's use of restraints on disabled children in contradistinction to "mainstream" children is the heart of Plaintiff's discrimination case, Plaintiff has not demonstrated that the alleged violation of the

CPPRA itself is relevant to demonstrating this disparate treatment.  The Court concludes that any relevance of the evidence regarding a violation of the CPPRA is vastly outweighed by the extremely prejudicial effect of allegations that Defendant has violated a state law where no such violation is charged in any claim at issue. Accordingly, the evidence regarding the alleged violation of the CPPRA is inadmissible under Rule 403, and Defendant's Motion is granted as to that evidence.

As to the Guidelines and the School Board Policy, however, the Court finds that they are central to the claims at issue.  Plaintiff alleges that Defendant applied its policies disparately to disabled and "mainstream" children.  (ECF No. 293 at 1-2.)  The Guidelines establish policy guidance for Defendant and other school districts in Colorado, while the School Board Policy establishes a policy enacted for Defendant itself.  Whether Defendant applied its own policies differently to disabled children is undoubtedly relevant to Plaintiff's claims of disparate treatment.

Defendant has made no argument with respect to the Guidelines except to note that they are derived from the CPPRA, and suggest that Plaintiff's use of evidence of the Guidelines is a way to improperly introduce evidence of the CPPRA.  (ECF No. 281 at 1-4.)  However, the fact that the Guidelines correspond to a statute that is not at issue does not make the Guidelines themselves inadmissible.  In balancing Rule 401 with Rule 403, the Court concludes that Plaintiff may introduce evidence of the Guidelines and argue that Defendant failed to follow them, but may not imply any violation of law or invoke any of the other risks of unfair prejudice arising from the introduction of evidence of the CPPRA.  Accordingly, the Court denies Defendant's Motion as to evidence of the Guidelines.

With respect to the School Board Policy, Defendant argues that it is irrelevant because it was not yet implemented during the 2006-2007 school year, the time period when the challenged use of the restraint desk occurred. (*Id.* at 7-9.) However, Defendant admits that the School Board Policy was drafted and was approved during that time period. (*Id.* at 7-8.) Evidence showing that a policy existed that would limit the use of the challenged restraint, but was not applied or implemented to prevent such use for several months, is relevant to Plaintiff's claim that her right to be treated the same as a "mainstream" child was deliberately disregarded. Introduction of such evidence will not unduly confuse the jury merely because the School Board Policy was not yet implemented. Accordingly, the Court denies Defendant's Motion as to the evidence of the School Board Policy.

### D.     Legal Center Report

Defendant seeks to preclude the admission of evidence of the Legal Center Report, as well as related testimony by Allison Daniels and Thom Miller regarding their investigation, findings, and conclusions in the Legal Center Report. (ECF No. 281 at 4-7.) Defendant argues that the Legal Center Report is inadmissible hearsay, that it contains inadmissible legal conclusions, and that Daniels's and Miller's testimony would be hearsay and/or undisclosed expert opinions by attorneys on issues of law. (*Id.*)

Plaintiff contends that the Legal Center Report falls under the hearsay exception for public records under Rule 803(8). (ECF No. 293 at 4.) Although the Legal Center is a non-profit organization, not a public agency, Plaintiff argues that it should qualify as a public agency under Rule 803 because it is "Colorado's designated quasi-public entity

to protect and advocate the rights of the disabled". (ECF No. 293 at 4.) The Court has little difficulty rejecting this argument. Plaintiff admits that the Legal Center is an advocacy organization and the Legal Center Report was prepared by attorneys advocating for disabled individuals like Plaintiff. Rule 803(8), on the other hand, exists because of the assumption that a public official at a public agency is a reliable source who "will perform his duty properly and the unlikelihood that he will remember details independently of the record." Fed. R. Evid. 803, advisory committee's note to paragraph (8). The Legal Center Report is an evaluative report prepared from an advocacy perspective, and Plaintiff has provided no support for its argument that such a report appropriately falls under Rule 803(8).

Alternatively, Plaintiff argues that the Legal Center Report is a business record under Rule 803(6). (ECF No. 293 at 4.) The Court similarly rejects this argument. The business record exception is designed for records "kept in the course of a regularly conducted activity of a business," Fed. R. Evid. 803(6), based on the assumption that such records are unusually reliable because they are kept routinely under a duty of accuracy relied upon by the business itself. *Id.*, advisory committee's note to paragraph (6). The Legal Center Report documents a one-time investigation conducted by advocates and includes their legal conclusions; it is not a bookkeeping entry or time clock record transcribed without any motivation to reach a particular result. *See id.* (cases applying business record exception "hinge on motivation"). Thus, to whatever limited extent that the business record exception applies to the Legal Center Report, the Court finds that Defendant has shown that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid.

803(6)(E). Accordingly, the Court finds that the Legal Center Report is inadmissible hearsay.

As for the testimony of Daniels and Miller regarding the Legal Center Report, the Court agrees with Defendant that it constitutes expert opinion testimony, as it would entail attorneys providing *opinions* on matters of law, areas within their specialized knowledge. Thus, their testimony does not qualify as lay opinion testimony. Fed. R. Evid. 701. While Plaintiff argues that Daniels and Miller would testify as to their own observations and information told to them by Defendant's employees, which itself would not constitute expert opinion testimony, the Court finds that the application of the law to such facts, which would undoubtedly occur in their testimony, also constitutes expert opinions. As Defendant notes, Plaintiff neither disclosed nor endorsed Daniels or Miller as experts in accordance with Federal Rule of Civil Procedure 26(a)(2), and may not present such testimony at this late date. Plaintiff also notes that Daniels and Miller will testify that the use of the restraint desk violated the CPPRA, but the Court has already found such evidence inadmissible under Rule 403. (*See* ECF No. 293 at 5.)

Accordingly, the Court concludes that the Legal Center Report, and related testimony by Daniels and Miller, is inadmissible under Rules 602, 701, and 802. Therefore, Defendant's Motion is granted as to this evidence.

**E.     Removal of Bars**

Defendant seeks to preclude the admission of evidence of its subsequent removal and disuse of the restraint bars on the challenged desks, arguing that such evidence of subsequent remedial measures is inadmissible to show culpable conduct under Rule 407. (ECF No. 281 at 9.) Plaintiff argues that it intends to use this

evidence to show "the feasibility of precautionary measures", an exception under Rule 407, because such evidence shows that "it was feasible to educate Ebonie and her fellow disabled classmates without using restraints." (ECF No. 293 at 6-7.)  Plaintiff also argues that such evidence may be used to impeach witnesses who testify that the restraint desk assisted with Plaintiff's education. (*Id.*)

The Court disagrees with Plaintiff's reading of Rule 407.  The exception for "feasibility of precautionary measures" applies only where feasibility is controverted.  Fed. R. Evid. 407, advisory committee's note.  That is, this exception applies where the opposing party argues that such measures were not feasible, but Defendant has raised no argument here that it could not remove the restraint bars.  The Court further finds that Plaintiff has not established a use for this evidence for impeachment purposes, because Defendant's subsequent removal of the restraint bars does not impeach testimony that their use had some educational purpose.  Accordingly, the Court finds that Rule 407 precludes the introduction of evidence that Defendant subsequently removed the restraint bars, and Defendant's Motion is granted as to this evidence.

**F.     Use of Restraint Desk on Other Students**

Defendant seeks to preclude the admission at trial of evidence of its use of the challenged restraint desk with students other than Plaintiff, specifically another disabled student named Justin. (ECF No. 281 at 9-11.)  Defendant argues that the way in which it used the restraint desk with Justin is irrelevant to the way it was used with Plaintiff, and such evidence would improperly suggest to the jury that Defendant used the restraint desk the same way with Plaintiff. (*Id.*)  Defendant further notes that evidence regarding Justin and his disabilities could violate his privacy rights under the Family

11

Educational Rights and Privacy Act, 20 U.S.C. § 1232(g), and could be improper character evidence under Rule 404(b).  (*Id.* at 11.)

Plaintiff contends that, because her claims are based on Defendant's use of the restraint desks on disabled children versus "mainstream" children, the fact that the restraint desk was used with other disabled students is relevant.  (ECF No. 293 at 7.)  However, Plaintiff makes no argument that the specifics of how the restraint desk was used with Justin, or any other student, are relevant to her claims.  As such, the Court agrees with Defendant that the evidence of the *way* the restraint desk was used with Justin or other students is minimally relevant, and the risk of confusing the issues substantially outweighs that relevance under Rule 403.

However, the Court finds that the *fact* that Defendant used the restraint desk with other disabled children, and not with "mainstream" children, is manifestly relevant and highly probative.  Defendant has not established any basis on which to exclude that evidence.  Accordingly, the Court grants Defendant's Motion in part as to evidence related to the use of the restraint desk with children other than Plaintiff.  Evidence of the fact that Defendant used the restraint desk with other disabled children is admissible, but evidence of the **specific ways** in which the restraint desk was used with specified other children is inadmissible under Rule 403.

**G.    IDEA Complaint**

Defendant seeks to preclude the admission of evidence related to Plaintiff's complaint and due process hearing under the IDEA, contending that it is irrelevant because Plaintiff has stated no claim under the IDEA.  (ECF No. 281 at 11-12.)  Plaintiff

12

responds that the due process hearing concluded with a finding that Defendant did not provide a "FAPE", or free appropriate public education, for Plaintiff during the 2006-2007 and 2007-2008 school years, and therefore this evidence is relevant to rebut Defendant's argument that the use of the restraint desk in the 2006-2007 school year was part of the appropriate education it was providing to Plaintiff.  (ECF No. 293 at 7-8.)

      The Court agrees with Defendant that any findings under the IDEA are irrelevant to Plaintiff's ADA and Section 504 claims at issue here.  Plaintiff states in her Response that "the hearing officer did not specifically tie his finding regarding 2006-2007 to the desk," but suggests that the hearing officer's decision is nonetheless relevant to Defendant's contention that it used the restraint desk for educational purposes.  (ECF No. 293 at 8.)  In fact, on review of the hearing officer's decision, the Court notes that the hearing officer mentioned that the restraint desk violated the CPPRA, but gave no indication that its use had any role whatsoever in the ultimate decision or determination regarding the FAPE.  (ECF No. 281-6 at 6.)  In stating his conclusions of law, the hearing officer explicitly noted that any impermissible use of restraints or damages resulting therefrom were outside his jurisdiction, and that in any case, the parties agreed that the restraint was not used during the relevant two years preceding the filing of the complaint in 2009.  (*Id.* at 21.)  Instead, the hearing officer's determination regarding the FAPE was based on a multitude of other findings regarding the inadequacy of Plaintiff's Individual Educational Plans and deficiencies in the way Defendant implemented them, specifically citing a failure to keep data and analyze techniques' effectiveness.  (*See id.* at 14-19.)  Thus, the Court finds that the use of the restraint desk had no bearing on the hearing officer's decision, and the determination

13

regarding a FAPE is not relevant to Plaintiff's claims in the instant case.

To the extent that the restraint desk is discussed in the hearing officer's decision, the Court finds such evidence of limited probative value, as it is mostly related to the alleged violation of the CPPRA, which the Court has already held inadmissible. Furthermore, such limited probative value is substantially outweighed by the risk of confusion of the issues from admitting evidence regarding the IDEA, an unrelated statute, and the use of the term "FAPE", which is a term of art with different definitions under the IDEA and Section 504. Accordingly, the Court finds that the evidence regarding Plaintiff's IDEA complaint and due process hearing is inadmissible under Rule 403, and Defendant's Motion is granted as to this evidence.

### H.     Collateral Source Funds

Plaintiff seeks to preclude the introduction of evidence that she received any funds from collateral sources, including from the state of California. (ECF No. 285 at 7-8.) Defendant indicates in its Response that it does not intend to introduce any such evidence. (ECF No. 294 at 8.)

Given Defendant's position on this evidence, there is no need for a ruling on its admissibility. Accordingly, Plaintiff's Motion is denied as moot as to evidence of Plaintiff's receipt of collateral source funds.

## II. CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

1. Defendant's Motion *in Limine* (ECF No. 281) is GRANTED IN PART and DENIED IN PART;

2. Plaintiff's Motion *in Limine* (ECF No. 285) is GRANTED IN PART and DENIED IN PART;

3. The following evidence will be inadmissible at trial, as discussed in detail above:

   a. Evidence regarding the cause of Plaintiff's broken arm, including the 2007 DHS report related to Plaintiff's daycare provider and the Pueblo Police Department report on Plaintiff's broken arm;

   b. Evidence of and concerning Defendant's violation of the CPPRA;

   c. Evidence regarding the Legal Center Report, including related testimony by Allison Daniels and Thom Miller;

   d. Evidence of Defendant's subsequent removal of and disuse of the restraint bars on the desks;

   e. Evidence of and concerning how Defendant used restraint desks with children other than Plaintiff, except for evidence of the fact that such desks were in fact used with other disabled children; and

   f. Evidence regarding Plaintiff's IDEA complaint and due process hearing; and

4. In all other respects, Defendant's Motion *in Limine* and Plaintiff's Motion *in Limine* are DENIED.

Dated this 25th day of February, 2015.

BY THE COURT:

[signature]

William J. Martínez
United States District Judge