IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:09-cv-00858-WJM-MEH

EBONIE S., a child, by her mother and next friend, MARY S.,

    Plaintiff,

v.

PUEBLO SCHOOL DISTRICT 60,

    Defendant.

---

**PLAINTIFF'S BRIEF IN SUPPORT OF AWARD OF PREJUDGMENT INTEREST**

---

Plaintiff Ebonie S., pursuant to the Court's March 25, 2015 Order [Dkt. 358], hereby submits her brief in support of an award of prejudgment interest.

## I. INTRODUCTION

On March 24, 2015, the jury returned a verdict in Ebonie's favor, awarding her $2,200,000.00 in compensatory damages.  The jury's verdict will allow Ebonie to begin, at last, the intensive therapy and lifelong care that is necessary because of Defendant's intentional discrimination against her.  The damage to Ebonie occurred in 2006 and 2007, and her acute need for services has not diminished in the interim.  Prejudgment interest on the award, like all prejudgment interest, will compensate her for not having the use of the funds — and not having the care the funds would have provided— since the time the discrimination against her ceased.  Ebonie is currently 13 years old and has a life expectancy of approximately 60.  The costs of a lifetime of psychological and medical services are far from certain.  Those costs, like all medical costs, can be expected to increase significantly and are, at best, unknowable.  The interest will,

1

hopefully, offset the unknown rise in the cost of services to allow her to obtain all the help she needs for the rest of her life. Additionally, although the jury awarded a sum certain, neither the award nor the cost estimates upon which it was based are adjusted for inflation.

A conservative interest rate that this Court has previously utilized results in prejudgment interest of $470,753. In calculating this amount, we have excluded the 28-month period when the case was on appeal. An award of this amount is necessary to fully compensate Ebonie, and is equitable under the circumstances. There are no equities that require a departure from the Tenth Circuit's "preference" for awarding prejudgment interest.

## II.  ARGUMENT

### A.  Prejudgment Interest is Typically Granted Where It is Compensatory, and the Equities Do Not Preclude It

As this Court has previously noted, "***prejudgment interest should normally be awarded on successful federal claims***." *EEOC v. Western Trading Co., Inc.*, 291 F.R.D. 615, 621 (D. Colo. 2013) (emphasis added). This flows from the principal that "in the federal context, [the Tenth Circuit] has adopted a preference, if not a presumption, for prejudgment interest." *United Phosphorus LTD. V. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236-37 (10th Cir. 2000); *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1288 (10th Cir. 1998) ("prejudgment interest is therefore ordinarily awarded, absent some justification for withholding it."); *Pabst v. Oklahoma Gas & Electric Co.*, 228 F.3d 1128, 1135 (10th Cir. 2000).

It is well established that "awards of prejudgment interest are governed by fundamental considerations of fairness." *In re Bakay*, 454 Fed.App'x 652, 654 (10th Cir. 2011). Prejudgment interest is intended to provide full compensation, and it is not intended to be punitive. *Western Trading Co.*, 291 F.R.D. at 621. It is to ensure that a party is "fully compensated for [her] damage without receiving a windfall." *Id.* at 622. The doctrine recognizes that payment of a judgment for damages incurred in the past does not account for the time value of money. "[P]rejudgment interest helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred." *Reed v. Mineta*, 438 F.3d 1063, 1066 (10th Cir. 2006); *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002) ("the rule in this circuit is that prejudgment interest is generally available to compensate the wronged party for being deprived of the monetary value of [her] loss from the time of the loss to the payment of the judgment"). Prejudgment interest "is intended to compensate a party for the delay in recovering [her] loss." *Suiter,* 151 F.3d at 1289.

Prejudgment interest should begin to accrue from the date of the injury. *See Reed*, 438 F.3d at 1066 (prejudgment interest accrues when the victim sustains monetary injury).

The Tenth Circuit has set out a two-part test to determine the availability of prejudgment interest. Prejudgment interest should be granted if the award is (1) compensatory in nature and (2) equitable considerations would not preclude the award. *United Phosphorus LTD Inc.*, 205 F.3d at 1236-37 (reversing district court for denying prejudgment interest on grounds that damages were speculative instead of using two-part test); *accord Overbrook Farmers Union Cooperative Assoc. v. Missouri Pacific*

*Railroad Co.*, 21 F.3d 360, 366 (10th Cir. 1994) (reversing district court's denial of prejudgment interest on grounds that damages were not certain prior to judgment and stating that two-part test governs availability of prejudgment interest).  Both elements are satisfied here.

> **B.     Prejudgment Interest Will Compensate Ebonie for the Time Value of the Verdict to Offset Increased Costs of Care.**

As a threshold matter, it cannot be disputed that both the ADA and Rehabilitation Act authorize an award of prejudgment interest.  *See Loeffler v. Frank,* 486 U.S. 549, 558 (1968) (prejudgment interest is "an element of complete compensation," and "Title VII authorizes interest awards as a normal incident of suits"); 29 U.S.C. §794a(a)(1) (incorporating remedies under Title VII, 42 U.S.C. 2000e-5(g), for claims under Rehabilitation Act, including "the availability of . . . other appropriate relief in order to achieve an equitable and appropriate remedy."); 42 U.S.C. §12133 (remedies under Title II of ADA are the same as those provided for by the Rehabilitation Act); *Herman v. City of Allentown*, 985 F.Supp. 569, 581 (E.D.Penn. 1997) ("The award of prejudgment interest is appropriate in ADA cases.").

Prejudgment interest would serve as a step towards full compensation for Ebonie.  The Jury's verdict was based on numerous categories of specific services that Dr. Huckabee testified to, and which were summarized in Plaintiff's closing.  The time those services will be required range from two years to the remainder of Ebonie's life.  The cost of those services years or decades from now cannot be known.  What is known is that the Defendant's discrimination ceased as of April 9, 2007, that she has not made progress in her education since that time, and that the need for intense

4

intervention has increased as time has passed, and that neither the verdict nor the cost estimates upon which it was based are adjusted for inflation.  Ebonie has been deprived of the use of the funds – and deprived of the care that the funds would buy - since she left Bessemer Academy in April 2007.   The damage, and the need for costly care to remedy it, was fixed at that time.  Prejudgment interest in that context is not a windfall, and may very well still fall short of the true costs of future care, but it is the minimum to which Ebonie is entitled.

Defendant may argue that no prejudgment interest is appropriate because most of the medical expenditures and treatment will be incurred in the future, analogizing this case to cases involving front-pay or lost future profits where prejudgment interest typically is not awarded.  Such a comparison is inappropriate.  Unlike lost profits or front-pay, this case does not involve future revenue or income, but only future expenditures.  The right to front-pay would not accrue until some future date, and, therefore, there is no lost investment value of that money before that date arises.  Plaintiff is not aware of cases where the award of prejudgment interest turns on when the money is to be spent, as opposed to when the injury occurred or the right to the money accrued.   Any damages award will necessarily be spent in the future, and the timing of the expenditures is irrelevant.  Moreover, in this case, the services that Ebonie requires would have been less expensive and more effective had she been able to obtain them earlier.  Ebonie is being compensated for an injury that occurred in the past, and the full amount of the judgment plus interest are needed now to help offset future cost increases.  *See Carlton v. H.C. Price Co.*, 640 F.2d 573, 577 (5th Cir. 1981) ("the award of prejudgment interest on the entire judgment, including that portion

5

allocated to future medical expenses, was proper under Alaska law."). It is also irrelevant that the amount of damages may not have been fixed until the verdict. *See US ex rel Sun Const. Co. Inc. v. Torix General Contractors LLC*, 2011 WL 2182900, ar *7 (D. Colo. Jun. 6, 2011) (rejecting argument that plaintiff was not entitled to prejudgment interest on damages that were "unliquidated until the time of the verdict.").

### C. Equitable Considerations Do Not Preclude Prejudgment Interest.

The equities all weigh in favor of awarding prejudgment interest. Ebonie's ability to learn was brought to a standstill by Defendant's deliberate indifference, and she has not yet had the opportunity to begin to undo that damage. It is Ebonie who faces a lifetime of care and the uncertainty whether the award will be sufficient to pay for all of the necessary services. If there are any equities at all that weigh in Defendant's favor, there certainly are none that compare to ensuring that a young disabled girl damaged by the Defendant's deliberate indifference has the maximum opportunity to obtain all of the benefits the jury intended.

Although an award of prejudgment interest is not intended to be punitive, balancing the equities does allow for consideration of the nature of a defendant's conduct. A defendant's "wrongdoing [favors] an award of prejudgment interest." *U.S. Indus., Inc.*, 854 F.2d at 1257-58; *accord Suiter*, 151 F.3d at 1289 ("the equities favor an award of prejudgment interest when the defendant's behavior involved dishonest or fraudulent conduct"); *Kleir Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.3d 1036, 1041 (10th Cir. 1990) ("[T]rial court would abuse its discretion by not awarding prejudgment interest where infringement is flagrantly deliberate"); *Gorenstein*

6

*Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.3d 431, 436 (7th Cir. 1989) ("The award of prejudgment interest is particularly appropriate in a case such as this where the violation was intentional, and indeed outrageous."); *City National Bank v. American Commonwealth Financial Corp.*, 608 F. Supp. 941, 943 (W.D.N.C. 1985) ("In deciding whether an award [of prejudgment interest] is in accord with fundamental fairness the Court should assess the personal wrongdoings of the defendants.").

The jury found that the Defendant intentionally discriminated against Ebonie, which required it to find that the Defendant was at least deliberately indifferent because it "knew that its conduct was substantially likely to cause harm to [Ebonie's] federally protected rights" and that it "failed to act upon that likelihood of harm." [Dkt. 344 at 24]. "Deliberate indifference is more than ordinary or gross negligence." *Id.* The jury's conclusion that the Defendant was deliberately indifferent to Ebonie's rights and intentionally discriminated against her further supports an award of prejudgment interest.

Prejudgment interest also has a proper deterrent effect. *Kleir Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1041 (10th Cir. 1990); *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290 (7th Cir. 1987) ("We have held that prejudgment interest is part of full compensation under other statutes, necessary to carry out the federal policies of compensation and deterrence."). Deterrence is of particular concern to prevent intentional discrimination against the disabled. *See Lamb v. John Umstead Hosp.*, 19 F.Supp.2d 498, 507 (E.D.N.C. 1998) ("The ADA's unequivocal purpose is to deter, prevent, and remedy unconstitutional discrimination, i.e. irrational classification and discrimination against the disabled."); *Gutierrez-Usera v. Puerto Rico Telephone*

*Co.*, 967 F.Supp.35, 38 (D.P.R. 1997) ("Because [the] ADA was patterned after the Rehabilitation Act, both of these statutes aiming to deter unlawful discrimination toward the disabled . . ."). Deterring further discrimination against disabled children in public schools is a worthy goal.

It is difficult to conceive of any equities that weigh against an award of prejudgment interest in these circumstances. Ebonie deserves to be fully compensated for the damage the Defendant intentionally caused. Full compensation may not be possible, but prejudgment interest at least makes it more likely.

### D. The Court Should Apply the IRS Underpayment Rate From the Date Ebonie Left Bessemer Academy Through the Judgment, Adjusted for the Period the Case was on Appeal.

Where the "prejudgment interest award [is] governed by federal law, [the court is] free to choose any interest rate which would fairly compensate the plaintiff for the delay in the receipt of payment." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 764 (10th Cir. 1997). This Court has recognized that it has "significant discretion" to select a prejudgment interest rate that fits the circumstances, and ensures that a party is "fully compensated for [her] damages without receiving a windfall." *Western Trading Co.,* 291 F.R.D. at 621-22. In *Western Trading,* this Court chose to apply the IRS underpayment rate set forth in 21 U.S.C. § 6621 because it reflected the "economic realty" of the period of loss had the funds been invested. *Id. at 621*. The same rate should be applied here for the same reason.

The rate is calculated as the federal short-term rate, plus 3%. 21 U.S.C. § 6621(a)(2). The current federal short-term rate is .48%, resulting in a total interest rate of 3.48%. Exhibit A. That rate is conservative because, if the funds had been available,

8

they could have been invested in securities from April 9, 2007 through the date of the verdict on March 24, 2015.  For comparison, the Standard & Poor's 500 Index closed at 1441.61 on April 9, 2007 and closed at 2091.50 on March 24, 2015, the date the verdict was rendered, which is equivalent to an average annual rate of return of 4.76%.  Moreover, that rate of return does not include any paid dividends, which would raise the rate of return to approximately 6.84%, if dividends had been reinvested.  History of S&P 500 Index available at *http://us.spindices.com/indices/equity/sp-500*.  Thus, 3.48% is a conservative rate to capture the replacement for the lost investment value of the money.[1]

"The general rule is that interest runs from the time of the loss to the payment of judgment."  *Pabst*, 228 F.3d at 1136 (rejecting defendant's argument that prejudgment interest should be awarded only from the time the complaint was filed); *accord Zuchel*, 997 F.2d at 746.   Interest should run from April 9, 2007 for the reason described above.  However, Plaintiff is not seeking interest over the entire period between her last day at Bessemer Academy and the verdict.  Plaintiff has excluded the entire period that the case was on appeal, a period of almost 28 months, beginning with Plaintiff's Motion to Stay Trial Deadlines, filed on May 4, 2011 [Dkt. 160] through Plaintiff's Unopposed Motion to Reopen Case, filed on August 28, 2013 [Dkt. 243].[2]  Plaintiff has voluntarily

---

[1] The rate is also conservative because the same rate has been applied for the entire period although rates were higher before the recession in late 2008.

[2] An additional extension of this period is not warranted even though it required nineteen months to get to trail after the case was reopened in 2013.  That schedule was dictated by the Court's calendar, over which Plaintiff had no control.  "An award of prejudgment interest also recognizes that victims of discrimination should not be penalized for delays in the judicial process . . ."  *Cf. Carr v. Fort Morgan Sch. Dist.*, 4 F.Supp.2d 989 (D. Kan. 1998).  Irrespective of the intervening appeal, Defendant was "found to have treated [her] in a

eliminated any accrued interest during that 28-month period, despite the fact that the Defendant could have taken that opportunity to settle the case. The combination of the conservative interest rate and the removal of this lengthy period of accrual renders the interest calculation reasonable.[3]

The interest calculation based on these parameters is as follows:

| Start | End | Beg Bal | Interest | End Bal |
|---|---|---|---|---|
| 4/9/2007 | 4/8/2008 | $2,200,000 | $76,560 | $2,276.560 |
| 4/9/2008 | 4/8/2009 | $2,276,560 | $79,224 | $2,335.784 |
| 4/9/2009 | 4/8/2010 | $2,335,784 | $81,981 | $2,437,766 |
| 4/9/2010 | 4/8/2011 | $2,437,766 | $84,834 | $2,522,600 |
| 4/9/2011 | 5/5/2011 | $2,522,600 | $6,494 | $2,529,094 |
| 5/6/2011 | 8/28/2013 | $2,529,094 | $0 | $2,529,094 |
| 8/29/2013 | 8/28/2014 | $2,529,094 | $88,012 | $2,617,106 |
| 8/29/2014 | 3/24/2015 | $2,617,106 | $53,647 | $2,670,753 |

---

discriminatory manner and thus put itself in the position of having to compensate [her] some day for the resulting damages, the value of which [the District] enjoyed during the period the delay in the case." *See Argue v. David Davis Enterprises, Inc.*, 2009 WL 750197, at *28-29 (E.D.Penn. Mar. 20, 2009) (awarding prejudgment interest notwithstanding delays caused by plaintiff due to disqualification of plaintiff's counsel).

[3] To the extent that the Defendant argues for a later date for interest to begin accruing, that would also argue in favor of a higher interest rate. Investments have increased in value at a significantly faster rate after the recession in late 2008. Accruing interest from 2007 takes into account the fact that stock prices were near record highs at that time. Nonetheless, the court has discretion to apply the Colorado statutory rate of 8%. Colo. Rev. Stat. §5-12-102(1)(a). *See Allison v. Bank One–Denver*, 289 F.3d 1223, 1244 (10th Cir. 2002) (affirming use of 8% rate for federal claim). That rate results in prejudgment interest of $1,204,880.

10

### III. CONCLUSION

For the foregoing reasons, Ebonie respectfully requests that the Court enter a judgment that includes prejudgment interest in the amount of $470,753.00 for a total judgment, exclusive of costs and fees, of $2,670,753.

Respectfully submitted this 1st day of April, 2015.

| | |
|---|---|
| Katherine Gerland<br>Law Offices of Louise Bouzari, LLC<br>7887 E. Belleview, Suite 1100<br>Englewood, CO  80111<br>Phone: (303) 228-1616<br>Fax: (303) 771-0460 | *s/ Douglas L. Abbott*<br>Maureen Reidy Witt<br>HOLLAND & HART LLP<br>6380 S. Fiddlers Green Circle,<br>Suite 500<br>Greenwood Village, CO  80111<br>Phone: (303) 290-1629<br>Fax: (303) 975-5301<br>mwitt@hollandhart.com<br><br>Douglas L. Abbott<br>HOLLAND & HART LLP<br>555 Seventeenth Street, Suite 3200<br>Post Office Box 8749<br>Denver, CO  80201-8749<br>Phone: (303) 295-8292<br>Fax: (303) 975-5408<br>dlabbott@hollandhart.com<br><br>**ATTORNEYS FOR PLAINTIFF** |

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following email addresses:

Courtney B. Kramer          ckramer@sgrllc.com
Thomas S. Rice              trice@sgrllc.com


                                *s/ Douglas L. Abbott*

7683883_3