# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 09-cv-0858-WJM-MEH

EBONIE S., a child, by her mother and next friend, MARY S.,

    Plaintiff,

v.

PUEBLO SCHOOL DISTRICT 60,

    Defendant.

---

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTIONS FOR ATTORNEYS' FEES AND COSTS

---

Plaintiff Ebonie S. ("Plaintiff"), by her mother and next friend, Mary S., brought this action in 2009 under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. §§ 794 *et seq.*, as well as several other claims, against Defendant Pueblo School District 60 ("Defendant") and several individual defendants, arising out of Defendant's use of a restraint desk on Plaintiff at school. (ECF No. 4.) On May 3, 2011, the Court granted Defendant's Motion for Summary Judgment in part, rejecting five of Plaintiff's original seven claims and dismissing all individual defendants. (ECF No. 159.) Plaintiff filed an interlocutory appeal, and the Court's order was affirmed. (ECF Nos. 230, 237.)

After the case was remanded to this Court, a jury trial on Plaintiff's ADA and § 504 claims against Defendant commenced on March 16, 2015, and a verdict was reached on March 24, 2015. (ECF No. 354.) The jury found in favor of Plaintiff and awarded her damages in the amount of $2,200,000. (*Id.*) Final Judgment was entered

on April 24, 2015.  (ECF No. 365.)  On May 26, 2015, Defendant filed a Notice of Appeal.  (ECF No. 371.)

This matter is before the Court on Plaintiff's Motion for Attorneys' Fees ("Fee Motion") (ECF No. 367), and Plaintiff's Motion for Review of Clerk's Taxation of Costs ("Cost Motion") (ECF No. 387).[1]  For the reasons set forth below, both motions are granted in part and denied in part.

## I.  LEGAL STANDARD

"The prevailing party" in an ADA and § 504 case is entitled to recover "a reasonable attorney's fee, including litigation expenses, and costs."  42 U.S.C. § 12205; *see* 29 U.S.C. § 794a(b).  However, a party seeking such an award must demonstrate that the fees she seeks are reasonable, and the Court is obligated to closely scrutinize the reasonableness of such awards.  *See Mann v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir. 1995).  Therefore, counsel must make a good faith effort to exclude hours or expenses that are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  "Moreover, hours that are not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority."  *Mann*, 46 F.3d at 1063 (internal quotation marks omitted; emphasis in original).

Generally, the starting point for any calculation of a reasonable attorneys' fee is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433; *Malloy v. Monahan*, 73 F.3d 1012,

---

[1] Although filed as two separate motions, the parties have argued both motions together in the briefing on the Fee Motion.

1017–18 (10th Cir. 1996). To determine the number of hours reasonably expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion. *Hensley*, 461 U.S. at 436–37.

As for the hourly rate, the Tenth Circuit has indicated that "the court must look to 'what the evidence shows the market commands for civil rights or analogous litigation.'" *Burch v. La Petite Academy, Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001) (quoting *Case*, 157 F.3d at 1255). The "local market rate" is usually defined by the state or city in which the case is litigated. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998) (looking at "the prevailing market rates in the relevant community"); *Case*, 157 F.3d at 1256 (looking at fees lawyers charge in the area in which the litigation occurs). The burden is on the party seeking fees to provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. *Ellis*, 163 F.3d at 1203.

## II. ANALYSIS[2]

Plaintiff's motions seek attorneys' fees and costs as a "prevailing party" pursuant to federal statute. (ECF No. 367 at 8; ECF No. 387 at 2.) While Defendant questions

---

[2] The Court presumes familiarity with the factual and procedural background of this case, and will not restate it here.

Plaintiff's overall degree of success in this case, Defendant does not dispute that Plaintiff was the prevailing party. (ECF No. 395 at 3, 7.) Accordingly, the parties agree that Plaintiff is entitled to a reasonable award of fees and costs, and the Court must determine the amount of that award.

A.  Attorneys' Fees

Plaintiff calculates her lodestar at $1,161,111.50, based on her attorneys' hourly rates multiplied by their respective number of hours billed, as follows.

| Timekeeper | Hourly Rate | No. of Hours | Total |
|---|---|---|---|
| **HOLLAND & HART** | | | |
| Maureen Witt (partner) | $530 | 466.3 | $247,059.00 |
| Doug Abbott (of counsel) | $475 | 510.2 | $242,345.00 |
| Jill Nickerson (paralegal) | $220 | 162.7 | $35,794.00 |
| Jonathan Bender (partner) | $425 | 157.2 | $66,810.00 |
| Christina Gomez (partner) | $425 | 96.5 | $41,012.50 |
| CiCi Cheng (associate) | $250 | 10.1 | $2,525.00 |
| Clarissa Collier (associate) | $290 | 32.9 | $9,541.00 |
| Jason Crow (associate) | $295 | 15.6 | $4,602.00 |
| Anastasia Fainberg (associate) | $225 | 9 | $2,025.00 |
| Keeya Jeffrey (associate) | $295 | 10 | $2,950.00 |
| Michael Manning (associate) | $280 | 51.9 | $14,532.00 |
| Joseph Neguse (associate) | $285 | 58.2 | $16,587.00 |
| **BOUZARI FIRM** | | | |
| Kate Gerland | $285 | 1,055.50 | $300,319.50 |
| Louise Bouzari | $285 | 449.90 | $128,221.50 |
| Margaret Pfleuger | $275 | 23.10 | $6,352.50 |
| Danna Martin | $150 | 266.10 | $39,915.00 |
| Desiree Vandelae | $125 | 0.3 | $37.50 |
| Sean Steven | $70 | 6.90 | $483.00 |

(ECF No. 367 at 17–18.)

1.  Hourly Rates

While Defendant does not dispute that the Bouzari Firm's hourly rates are reasonable, Defendant challenges Holland & Hart attorneys' rates, arguing that they are unreasonably high for the type of case at issue here. (ECF No. 395 at 5–7.) Defendant

4

also challenges the $220 hourly rate of Holland & Hart's paralegal, Jill Nickerson, as exorbitant. (*Id.* at 6–7.) Defendant first proposes reducing all of Holland & Hart's rates to the rates of the Bouzari firm. (*Id.* at 6.) Defendant then proposes that, "at most," the Court could apply the hourly rates proposed by J. Andrew Nathan, Defendant's attorneys' fees expert, whose affidavit suggested reducing Ms. Witt's rate to $400, Mr. Abbott's rate to $375, Mr. Bender and Ms. Gomez to $325, and the associate attorneys to $240. (ECF No. 395-1 at 10.) These opinions are based in part on Mr. Nathan's understanding from Plaintiff's filings that neither Ms. Witt nor Mr. Abbott have civil rights litigation experience, despite their lengthy practice as civil litigators. (*Id.* at 9–10.) Mr. Nathan also opines that Ms. Nickerson should be billed at $150 per hour, the same as Ms. Martin, the Bouzari Firm's paralegal. (*Id.* at 10–11.)

The Court believes Holland & Hart's hourly rates to be excessive for this type of case, but does not believe that they should be reduced to the same rates billed by the Bouzari Firm. Indeed, the Bouzari Firm decided to associate with Holland & Hart in the fall of 2010 precisely because it determined that it needed the assistance of more experienced civil litigators and greater resources to take this case to trial. (ECF No. 367 at 7.) Thus, Plaintiff benefited substantially from the experience of Holland & Hart's litigators, particularly Ms. Witt and Mr. Abbott, without any loss from their relative lack of experience in disability litigation, as the Bouzari Firm remained on the case as well. While this created some overstaffing concerns, *see infra* Part II.A.2, it was reasonable for Plaintiff to seek seasoned civil litigators to take her case to trial.

Nevertheless, the Court finds some of Holland & Hart's rates to be well above average based on the Court's own experience and understanding of the Denver market,

5

and deems it reasonable to reduce these rates in accordance with the market for litigating disability cases. Accordingly, the Court will reduce Ms. Witt's billing rate to $475 and Mr. Abbott's to $425, the rate for Mr. Bender and Ms. Gomez will be reduced to $400, the rates for associates Ms. Collier, Mr. Crow, and Ms. Jeffrey will be reduced to $265, and the rates for associates Mr. Manning and Mr. Neguse will be $260. The Court also agrees that a billing rate of $220 is excessive for a paralegal, even a very experienced one, and will reduce Ms. Nickerson's rate to $190.

Applying these rates to the number of hours Plaintiff has billed results in a reduced lodestar of $1,095,226.[3] As Defendant also challenges the number of hours Plaintiff's counsel reasonably expended, the Court will proceed to considering that issue.

2. Number of Hours

Defendant makes several arguments that the number of hours Plaintiff's attorneys expended were unreasonable, the first of which is a "prevailing party" argument. Defendant argues that, because Plaintiff originally brought seven claims in this case, she only prevailed at trial on two claims, because the Court granted summary judgment on the other five claims. (*See* ECF No. 395 at 7 (citing ECF No. 159).) Defendant suggests that, as a result, Plaintiff's attorney's fees should be reduced by 29%, or two sevenths. (*Id.*) Defendant proposes that this is warranted because the Court can reduce fee awards based on the degree of success. (*Id.* at 8.) The Court rejects this argument out of hand. Defendant fails to cite any case in which a prevailing

---

[3] In performing this calculation, the Court noticed a multiplication error in Plaintiff's calculation of the fees for Kate Gerland; $285 times 1,055.5 hours is $300,817.50, not $300,319.50. (*Contra* ECF No. 367 at 18.) The Court has corrected this error in its calculations.

party at trial had her fees reduced because some claims were lost years earlier on summary judgment, rather than because the party only prevailed on some claims at trial. (*Cf. id.* (citing *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1128 (D. Colo. 2008)).) The Court therefore declines to follow Defendant's novel suggestion.

However, Defendant raises other, more specific, challenges to Plaintiff's billed hours, several of which merit reductions in hours when calculating Plaintiff's fee award. Defendant largely relies on the opinions of Mr. Nathan and Lisa Mancini Saunders, who performed an audit of Plaintiff's billing invoices. (ECF No. 395-4.)

Based on these expert opinions, Defendant challenges certain time entries that are "block billed." (ECF No. 395 at 10–11.) "So-called block billing consists of attorneys recording large blocks of time for tasks without separating the tasks into individual blocks or elaborating on the amount of time each task took. Use of this rather imprecise practice may be strong evidence that a claimed amount of fees is excessive." *Flying J Inc. v. Comdata Network, Inc.*, 322 F. App'x 610, 617 (10th Cir. 2009). However, the determination of whether a fee is excessive remains in the Court's discretion. *Id.* Ms. Saunders opined that "block billing" affected 1,029.5 hours, such that she could not determine whether those hours might have been excessive. (ECF No. 395-4 at 4.) She proposed that these tasks be reduced by 20–30%. (ECF No. 395-5 at 4.) Mr. Nathan also stated an opinion about block billing, opining that "Plaintiff's request for attorney's fees should be reduced by between 20 and 30 percent for block billing alone." (ECF No. 395-1 at 7.) However, Mr. Nathan does not identify the specific time entries he believes are block billed, and the Court is not persuaded that an overall reduction is warranted on that basis.

Block billing is not impermissible, but it makes it more difficult to determine whether the billed hours are reasonable. *Cf. Flying J Inc.*, 322 F. App'x at 617 (10th Cir. 2009) (holding that "the decision whether block billing indicates an unreasonable claim should remain with the district court who should be allowed to exercise its discretion accordingly"). The Court has reviewed the relevant entries, and agrees that their lack of precision warrants a reduction of hours. Applying the Court's reduced fee rates to the 1,029.5 hours Ms. Saunders identified as block billed, these tasks account for $309,880 in fees. Reducing this amount by 20%, which is at the low end of the range of fee reduction called for by both of Defendant's experts, amounts to a reduction of $61,976 from the aggregate sum of block billed fees. This in turn results in a total reduced fee for these tasks of $247,904, which the Court finds is reasonable.

Defendant next argues that the overstaffing of this case resulted in unnecessary duplication of work, and meetings and conferences to update all of the different attorneys working on the case. (ECF No. 395 at 12–13.) In Ms. Saunders' report, she identifies $28,067 worth of duplicative review of documents by multiple attorneys at the same professional level, and $81,507.50 worth of communications among Holland & Hart personnel, and between Holland & Hart and the Bouzari Firm (both amounts calculated using Holland & Hart's original hourly rates). (ECF No. 295-5 at 3.)

The Court has reviewed the time entries Ms. Saunders identified, and disagrees that all of these time entries are superfluous. A natural consequence of co-counseling relationships is the need to communicate and conference between co-counsel, and the Court has already found that Plaintiff reasonably benefited from the use of co-counsel here. Furthermore, most of the time entries that Ms. Saunders found to be duplicative

8

are not clearly so; for instance, several entries of both Ms. Bouzari and Ms. Gerland that read "edited federal complaint" or "revised mediation statement" with some intervening communications or research appear to reflect edits based on new information or strategy decisions. (*See, e.g.*, ECF No. 395–5 at 10–11, 14–15; *see also* ECF No. 395-6 at 14–15, 22, 24, 36–38, 53, 65–67.) However, a few of these duplicate entries appear without any intervening event or other apparent reason, and the Court agrees that some such entries are duplicative and unnecessary for purposes of the instant Fee Motion, including entries in which multiple attorneys attended a conference and each billed for it as well as time spent conferring afterward. (*See* ECF No. 395–5 at 16, 26, 35, 51–52, 54; ECF No. 395-6 at 19–20, 25–26, 33–35, 40–41.) Accordingly, the Court will reduce the hours billed by Ms. Gerland, Ms. Bouzari, Ms. Witt, Mr. Bender, and Ms. Gomez by 10 hours each to generally account for this duplication. At these attorneys' reduced billing rates, this amounts to a reduction of $18,450.

Defendant argues that Ms. Nickerson's assistance at trial, which amounted to 63.7 hours, was unnecessary and should be eliminated from the fee award. (ECF No. 395 at 14.) The Court disagrees. Ms. Nickerson was the only paralegal who billed on this case during the trial phase, and she assisted trial counsel throughout the trial. The Court declines to eliminate Ms. Nickerson's trial hours.

Defendant also argues that a number of hours should be eliminated because they dealt with elements of the case that were unsuccessful on summary judgment. (ECF No. 395 at 14–16.) These include a large number of hours spent researching Equal Protection and drafting the response to the Motion for Summary Judgment. (*Id.*)

9

The Court also declines to eliminate these hours from the fee award. Plaintiff's claims, though unsuccessful, were plausibly pled, and her complete and fully researched response to Defendant's arguments on summary judgment was reasonably warranted.

However, the Court is more sympathetic to Defendant's argument that certain tasks were repeated in Plaintiff's pre-appeal and post-appeal phases of this case which should not have required billing similar numbers of hours for both phases. (*See id.* at 16–17.) For example, drafting the pretrial order in Phase I took 24.9 hours, and 22.4 hours in Phase II; drafting motions *in limine* in Phase I took 20.3 hours, and 67.1 hours in Phase II; drafting and revising jury instructions in Phase I took 15 hours, while in Phase II—with significantly reduced numbers of claims—Plaintiff billed 15.4 hours. (*See* ECF No. 395–4 at 3.) Plaintiff's counsel argue that they exercised billing judgment in this case to eliminate as much as possible duplication of tasks to compensate for these two phases and to eliminate time spent on the unsuccessful appeal. (ECF No. 367 at 12–15.) Indeed, counsel specifically refers to the jury instructions, noting that "a larger proportion of Phase I time has been excluded because the original jury instructions also pertained to the dismissed claims." (*Id.* at 15.) However, counsel also admits that Plaintiff "entered Phase II with [] nearly final exhibits, jury instructions on the remaining claims, . . . and motions *in limine*." (*Id.*) Plaintiff's counsel does not explain how, then, they were still required to spend 67.1 hours on the "nearly final" motions *in limine* in Phase II.

The Court agrees that, given Plaintiff's admission that these documents were nearly complete, these hours are duplicative, and will therefore reduce the number of

hours by 40 hours at Ms. Gerland's rate for the pretrial order and motions *in limine*, and 15 hours at Mr. Abbott's rate for the jury instructions.

Finally, Defendant argues that Plaintiff's use of a trial consultant which performed a mock trial and consulted on jury selection was unnecessary and duplicative. (ECF No. 395 at 17–18.) Defendant argues that this case was not so complex as to require a consultant, and that in any event, Holland & Hart was brought onto the case by the Bouzari Firm precisely for its trial experience such that working with such additional personnel was unnecessary and merely for counsel's convenience. (*Id.*) The Court disagrees that the trial consultant was completely unnecessary and duplicative, but finds that the 90.4 attorney hours billed by Holland & Hart for working with the consultant is similar to the above examples of duplicative billing. That is, if trial consultants are like additional attorneys who specialize in trials, Holland & Hart should not be fully compensated both for the expense of those additional personnel as well as for their own time in consulting with them. The Court concludes that the attorney time spent working with the trial consultant should be reduced by half, and will therefore subtract 45 hours at Mr. Abbott's rate from the lodestar, in the amount of $19,125.

3. Summary

For the reasons articulated above, the Court has reduced both Plaintiff's attorneys' hourly rates and the number of hours billed to them. The resulting amount is $977,900, which the Court deems a reasonable fee for this case.

**B.     Costs**

In addition to the $5,836.65 in costs already taxed by the Clerk of Court pursuant to 28 U.S.C. § 1920 (ECF No. 385), Plaintiff's Cost Motion seeks reimbursement of

additional expenses in the amount of $157,751.34 pursuant to the provisions of the ADA and § 504.[4] (ECF No. 387.) Defendant agrees that a reasonable award of expenses beyond the taxable costs under § 1920 is within the Court's discretion. (ECF No. 395 at 19.) However, Defendant challenges several of the particular expenses Plaintiff seeks. (*Id.* at 19–25.)

Defendant again cites the Affidavit of Ms. Saunders, who opined that Plaintiff's expenses should be reduced by a minimum of $20,478.55 because "those charges do not fall within generally accepted billing practices." (ECF No. 395-4 at 2–3.) As part of this proposed reduction, Ms. Saunders recommends eliminating $20,201.84 in Westlaw expense charges, which she opines should be considered overhead of the firm and should be eliminated in their entirety. (ECF No. 395-5 at 4.) Plaintiff disputes this number, stating that the Westlaw expenses for which reimbursement is requested totalled only $16,265.32, as Plaintiff exercised billing judgment and reduced her total legal research costs by half to address redundancies between the two phases of this case. (ECF No. 398 at 9.)

While the case law is inconsistent on whether legal research should be considered overhead or may be billed in its entirety, the Court follows the Tenth Circuit's admonition in *Case* that research expenses intended "to familiarize the

---

[4] Plaintiff's briefing on this issue in the Fee Motion requests a total of $163,658.98 in costs, but cites only Plaintiff's Proposed Bill of Costs in support of this number. (ECF No. 367 at 20 (citing ECF No. 366).) The Proposed Bill of Costs requests $70.99 less than the number in the Fee Motion, for a total of $163,587.99. (ECF No. 366 at 1.) Plaintiff's Cost Motion does not explicitly adopt either of these numbers, and just refers to "approximately $163,000." (ECF No. 387 at 1.) Because Plaintiff has not identified the source of the additional $70.99 expense, the Court has used the lower number provided in the Proposed Bill of Costs.

attorney with the area of law would normally be absorbed into a firm's overhead and that, therefore, attempting to charge an adversary with time spent conducting background research is presumptively unreasonable." *Case*, 157 F.3d at 1253.  In this case, the Westlaw expenses for both firms note the date and price but do not indicate the individual conducting the research or the subject, and only some of these entries can be cross-referenced to attorney time entries noting the subject of the research. Because of the ambiguity of these entries, the Court cannot determine whether many of them were merely "background research," or whether the subject matter was related to the prevailing claims in this case as opposed to those claims not ultimately tried.  *See id.* at 1258 (affirming trial court's reduction by half of Westlaw expenses in civil rights case, where billing statements failed to separate research related to prevailing claims from research related to claims lost).

The Court therefore concludes that it is reasonable to reduce Plaintiff's reimbursement for Westlaw expenses.  Because Defendant relied on a calculation of these expenses that totaled $20,478.55, the Court will award half of that amount, or $10,239.28.

Defendant challenges numerous other billed expenses, including $100 for service of summons and complaint on an individual defendant who was dismissed on summary judgment; $1,724.95 for transcripts from two hearings regarding Defendant's expert testimony; $1,212.41 for exemplification and copies of documents; and $5,104.50 for preparation of trial graphics.  (ECF No. 395 at 19–22.)  The Court finds that each of these amounts is compensable because each was reasonably necessary to litigate this case and prepare for trial.

However, Defendant points to several other expenses sought by Plaintiff that the Court agrees are not compensable. Plaintiff seeks $549.40 in witness fees and mileage for three witnesses who were listed on Plaintiff's "may call" list but were not called, and $4,335.80 for fees paid to, and a deposition of, an expert on Plaintiff's broken arm who was not called at trial because Plaintiff elected not to introduce evidence of the broken arm. These witnesses were not called because of Plaintiff's strategic or tactical decisions, not because of prior rulings made by the Court, and the Court declines to award these expenses. However, the Court will reimburse Plaintiff for the deposition costs and expert fees for other witnesses, even where they were not called at trial. Plaintiff's investigation into these witnesses' knowledge was reasonably necessary to support the claims that went to trial, and Defendant does not claim that these witnesses were irrelevant or that their depositions were otherwise unnecessary.

The Court also agrees with Defendant that Plaintiff should not recover her portion of fees for a mediation, which the parties previously agreed to split. (*See* ECF No. 395 at 24–25.) Plaintiff does not contest Defendant's characterization of this mediation. Accordingly, the Court declines to award the $553.13 Plaintiff expended there. (*See* ECF No. 366-15 at 3.) However, the remaining "miscellaneous" costs (postage, courier, and supplies) of $209.01 will be awarded, as will the $975.70 in travel and lodging costs for depositions and $140 for service of process, as these were all reasonably necessary in taking this case to trial.

Finally, Defendant disputes the $45,653.50 in expenses for trial consultants and mock trial, arguing that this amount is duplicative of the time Plaintiff's attorneys billed for the same preparation. The Court discussed this issue above in reducing Plaintiff's

attorneys' billable time for working with these trial consultants, and agrees that Defendant's arguments have merit. As this case was already well-staffed for Plaintiff, the Court finds the amount spent for costs and expenses related to trial consultants to be excessive. Accordingly, as the Court did with the billed time Plaintiff's attorneys spent on trial consulting and the mock trial, the Court will reduce the requested amount by half and will reimburse $22,826.75.

In total, and after considering the $5,836.65 in costs already taxed, Plaintiff shall be awarded an additional $123,460.22 in expenses.

### III.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 367) and Plaintiff's Motion for Review of Clerk's Action on Taxation of Costs (ECF No. 387) are each GRANTED IN PART and DENIED IN PART;

2. Plaintiff is AWARDED attorneys' fees in the amount of **$977,900.00** and reimbursement of additional expenses in the amount of **$123,460.22**. The Clerk shall enter judgment accordingly.

Dated this 22nd day of March, 2016.

BY THE COURT:

_____
William J. Martínez
United States District Judge